UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
..................................................................

UNITED STATES OF AMERICA

**Affirmation in Opposition to Government's
Motion for a Protective Order**

- against -

Case No. 04-CR-402 (TJM)

YASSIN MUHIDDIN AREF and
MOHAMMED MOSHARREF HOSSAIN
.................................................................

KEVIN A. LUIBRAND, being an attorney duly admitted to practice before the courts of the

State of New York, states and affirms the following under penalty of perjury:

1.      Affirmant is of counsel to the law firm of Tobin and Dempf, LLP, and is admitted to

practice before the United States District Court for the Northern District of New York and the United

States Court of Appeals for the Second Circuit, is counsel to defendant Mohammed Mosharref

Hossain, and submits this affirmation in opposition to the government's August 9, 2005 redacted

application for a protective order. [*Docket No. 119*]

**The Government is Utilizing Section 4 of CIPA to
Foreclose Adversarial Consideration of Its Arguments and
Reasoning on Discoverability of Possible
Rule 16, Brady and Other Discoverable Materials**

2.      On or about August 5, 2005 (based upon the court's order of August 10, 2005), the

government provided *ex parte* to the court an application Rule 4 of the Classified Information

Procedures Act (hereinafter "CIPA") and certain materials including, but not necessarily limited to,

affidavits of Timothy Coll and William Pericak, a declaration of Willie T. Huron, and a memorandum

of law.

3.      On August 9, 2005, an on-the-record conference was held [*Docket No. 122*], followed by an *ex parte* conference with defense counsel and the court. [*Docket No. 122*]

4.      During the court appearance of August 9, 2005, the government was directed by the court to serve upon the defense a redacted version of its August 5, 2005 application. [*Docket No. 120*] The defense does not know if it was the court or the government that establishes what text of the government's application is to be redacted.

5.      On August 9, 2005, the government served a redacted version of its application. [*Docket No. 119*]

6.      The government's redacted version reveals the affidavits of Timothy Coll and William Pericak and the declaration of Willie T. Huron to have no substantive paragraphs - all the substantive paragraphs are redacted - and, as I understand the redaction process, the space reserved in the documents for the redacted information has no relationship to the amount of text redacted. That is, the word "redacted" in the text could represent one sentence or twenty (20) pages of redacted material.

7.      The government's memorandum of law contains some seventy-five (75) cases and twenty-five (25) statutory citations, and also has redactions.

8.      Neither the affidavits or the memorandum of law inform the defense what materials that the government is seeking to foreclosure disclosure, arguments are presented corresponding to such items, and the relief that is sought by the government other than a general CIPA protective order.

9.      For the following reasons, the affirmant requests that the government's **application** - not yet the materials sought to be protected - be unredacted, and the defense have the opportunity to

2

respond to an unredacted version of the government's application within the context of the security arrangements created by the court, and that the court reserve decision on the pending application until the defense has the opportunity to examine the unredacted application and respond to all issues presented by the government for decision by the court.

A.    The Defense Attorneys Have Secret Security Clearances and the Apparatus Has Been Created to Protect Classified Materials

10.    The defense attorneys were subjected to an involved process with the Department of Justice, the result of which each was cleared to review materials classified by the government as "Secret".

11.    On August 9, 2005, affirmant was informed that he had been accorded by the government security clearance to review materials classified by the government up to "Secret".

12.    The "Secret" classification is defined as:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.

See 50 USCS §435.

13.    In an August 16, 2005 security clearance briefing by the United States Department of Justice, the Department of Justice representative informed affirmant that if the document classification warranted - and without significant undertaking by the Department of Justice - affirmant's security clearance could be raised to a higher level (i.e., "Top Secret") in order to allow affirmant the opportunity to review higher level security documents.

14.    As part of the clearance process, affirmant executed the attached instrument, which reads, in pertinent part:

> Having familiarized myself with applicable federal laws,

3

including the espionage laws of the United States, I understand that I may be the recipient of information and documents that concern the present and future security of the United States and belong to the United States, and that such documents and information, together with the sources and methods of collecting such, are classified according to security standards set by the United States Government. In consideration for the disclosure of classified information and documents, **I agree that I shall never divulge, publish, or reveal, either by word, conduct, or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States Government; or as authorized by the Court pursuant to the Classified Information Procedures Act;** or as provided for in the Protective Order entered in the case of United States v. Yassin Muhiddin Aref and Mohammed Mosharref Hossain, Case No. 04-CR-402 (TJM). I understand that this agreement and any other non-disclosure agreement will remain binding upon me after the conclusion of the proceedings in United States v. Yassin Muhiddin Aref and Mohammed Mosharref Hossain, Case No. 04-CR-402 (TJM).

[*Docket No. 96* (emphasis supplied)]

15.    Affirmant is therefore obliged to preserve the secrecy of any materials revealed to affirmant including the extent that the government's application reveals references to or the existence of classified materials.

16.    Apart from the security clearance, the court has previously directed the activation of a comprehensive Justice Department administrative process to protect materials from disclosure beyond the government and defense attorneys.

17.    There is a special room set aside for the attorneys at the courthouse, encoded telephones and computers in the process of initiation, and limitations created on defense counsel taking notes or removing classified information from the designated secured setting.

TOBIN AND DEMPF, LLP – ATTORNEYS AT LAW – 33 ELK STREET – ALBANY, NEW YORK 12207

18.     The purpose of the defense obtaining the security clearance and the initiation of the CIPA procedure was so that the defense attorneys could examine materials for their clients so as to adequately prepare a defense. Included in preparing that defense - and perhaps critical - is reviewing the government's applications to the court, then **arguing** for the release of materials possessed by the government, and then reviewing and analyzing those disclosed materials in order to form proper defenses.

19.     After all the security clearance and Department of Justice procedures have been effectuated, the defense now cannot even view the government's applications to the court on asserted grounds of classified information.

20.     If the government has in its application references to "classified materials", the very purpose of the security clearances was so that the defense attorneys could see "Secret" and otherwise classified materials. The entire Justice Department security process was initialized - the locked room, security clearances, special telephones, designated Justice Department personnel - **so** that the defense could review classified materials.

21.     The government should be directed to disclose its unredacted application to the defense, redacting from public disclosure those items designated "classified", and then allow the defense to view the application within the secured methods set up in this case (i.e. secure room, no notes to leave, no release to the public, etc.).

22.     The defense would then be in position to know the type and categories of materials the government is now asking the court to protect from disclosure, and be in a position to present arguments to the court in response to the application for disclosure of those materials.

TOBIN AND DEMPF, LLP - ATTORNEYS AT LAW - 33 ELK STREET - ALBANY, NEW YORK 12207

B.       The "Defenses or Defense Strategies"

23.       Upon receiving the unredacted application, the court allowed the defense to provide, in camera and *ex parte* if it chooses [*Docket No. 125*], the opportunity to identify to the court what their "defenses or defense strategies" may be as the court gives consideration to the government's motion. In this way, the court would consider itself more informed in considering the government's application.

24.       First, the defense is unable to properly or completely articulate defenses or possible defenses until it views materials which the government is obliged to provide to the defense (e.g. Brady v. Maryland) and statutes (Rule 16, et seq.). That is, the defenses are formed after the government discloses what it is obliged to disclose.

25.       The court's consideration of the government's application for possible Brady v. Maryland and undisclosed Rule 16 material in a vacuum based upon *ex parte* arguments by the government, though based in argument on CIPA Rule 4, undermines the portion of the adversary system where the prosecution and defense present arguments with respect to specific items of disclosure sufficient for the court to make proper rulings.

26.       The defense has no doubt whatsoever that this court is "mindful of Congress' judgment, expressed in CIPA, that the Executive's interest in protecting classified information does not overcome a defendant's right to present his case" as set forth in the court's order of August 16, 2005 [*Docket No. 125*]. But it is the process of the adversary system with respect to identified issues that produces a fair trial, and the fact that the issues that the court is now considering have been redacted by the prosecution from review and argument by the defense - including the relief sought by the government with respect to those issues - sidelines the adversary system.

6

27.    The occasions are innumerable where a court hears an argument and forms a preliminary perspective only to be persuaded otherwise when the adversary system allows the other attorneys to counter the arguments.

28.    Here, the court has seen one side of an application - the government's - and has before it many cases and statutes purportedly relied upon by the government. But, because the defense does not know what the arguments are about or what specific relief is sought, it cannot present to the court the contra-arguments, case law or reasoning.

29.    It is not possible for the adversary system to work to produce a fair trial if the defense is expected to accurately state its possible defenses and defense strategies before the government makes its mandatory disclosures, and the defense has an opportunity to argue on the sufficiency of those mandatory disclosures.

30.    Second, besides "defense and defense strategies", the defendants' counsel are entitled to "disclosure of classified information upon a showing that the information is 'relevant and helpful to the defense . . . or is essential to a fair determination of a cause'". United States v. Moussaoui, 382 F.3d 453 (4th Cir., 2004).

31.    The defense is not able to make a "showing" to support disclosure if it does not know what material the government is asking the court to withhold from the defense. The defense does not need to examine the material itself to satisfy its obligation to "show that information is 'relevant and helpful to the defense . . . or is essential to a fair determination of a cause'". Moussaoui, 382 F.3d at 453.

32.    But, the defense does need to know the type of material in a sufficiently descriptive way to be able to attempt a "showing".

TOBIN AND DEMPF, LLP - ATTORNEYS AT LAW - 33 ELK STREET - ALBANY, NEW YORK 12207

WHEREFORE, defendant Mohammed Mosharref Hossain opposes the court's consideration of the government's application relief without granting defendants' attorneys access to the unredacted application, including the relief requested by the government.

Dated: August 26, 2005

Kevin A. Luibrand