UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**Criminal Case No.:  04-CR-402**

United States of America,

- against -

Yassin Muhiddin Aref and Mohammed Mosharref Hossain,

Defendants.

## DEFENDANT MOHAMMED MOSHARREF HOSSAIN'S
## MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTION

Dated:  December 9, 2005                    Yours, etc.,

TOBIN and DEMPF, LLP
Kevin A. Luibrand, Esq.
Federal Bar Roll No. 102083
Attorneys for Defendant Hossain
Office and P.O. Address:
33 Elk Street
Albany, New York  12207
Telephone:  (518)463-1177
Facsimile:  (518)463-7489
Email:  kluibrand@tobindempf.com

## TABLE OF CONTENTS

Table of Authorities ..........................................................................................................................ii

Introduction ...................................................................................................................................... 1

Point I – Defendant Hossain was entrapped as a matter of law, and counts 1 through 17 of the superseding indictment alleged against him must be dismissed ...................................................... 2

    A. Defendant Hossain's alleged hiding of pizza business income ............................................ 5

    B. Defendant Hossain's solicitation of the informant to assist Defendant Hossain's brother in fraudulently obtaining a permit for a New York State driver's license ...................................... 9

    C. Defendant Hossain's allaged introduction of Aref into criminal activity .......................... 11

    D. The remainder of the predisposition evidence all occurred during the alleged loan offenses and is not "predisposition" ...................................................................................................... 12

Point II – The trial of the case against Defendant Aref must be severed from the trial against Defendant Hossain pursuant to U.S.C.S. Federal Rules of Criminal Procedure Rules 8(a)and (b) and 14 .......... 13

    A. Counts 28 through 30 should not have been joined to the indictment against Defendant Hossain in the first instance ................................................................................................... 20

        (1) The offenses charged in counts 28 through 30 of the Superseding indictment are not of the same or similar character ............................................................................................ 20

        (2) Counts 28 through 30 of the Superseding indictment are not based upon the same act or transaction ........................................................................................................................ 21

        (3) Counts 28 through 30 of the Superseding indictment and the remaining charges are not connected with or constitute parts of a common scheme or plan .............................. 21

    B. The substantial body of 404(b) prior bad act materials claimed by the government against Defendant Aref required severance of the trials ................................................................... 22

Point III – Defendant Mohammed Mosharref Hossain is entitled to production of specifically requested Brady material and material "relevant and helpful to the Defense… or essential to a fair determination of the case" .............................................................................................................. 25

    A. The government is obligated to provide all pre-arrest oral statements made by the Defendants during interviews with government agents ......................................................... 28

    B. The government is obligated to provide all written or tape recorded statements made by the Defendant ......................................................................................................................... 29

    C. The government is obligated to provide the transcripts of all tape recordings in its possession that will or may be used at trial or which are material to the preparation of the defense ............................................................................................................................... 30

    D. The government is obligated to produce the FBI 302s with respect to all conversations or recordings created by the government pertaining to the Defendants ................................... 32

E.  The government is required to produce the notebook found in Iraq containing Defendant Aref's name, specified materials related to the discovery of the notebook, and to identify for deposition certain individuals who found and translated the notebook.............................33

    1)  Circumstances related to finding the "notebook" ...........................................37

        (a)  Where it was found ...................................................................................37

        (b)  Who the notebook belongs to...................................................................40

        (c)  The Notebook translators both before and after the inaccurate translation presented but he government must be identified and made available to the defense ..................................................................................................44

F.  The complete criminal history of Defendants Aref and Hossain must be produced, including United States and overseas history ...........................................................45

G.  Brady impeachment materials...............................................................................46

H.  Preferential treatment or favors accorded by the government to the informant is Brady material..................................................................................................................47

I.  Materials or information in the government's possession regarding Defendant Hossain's lack of predisposition to commit to offenses charged..............................................49

J.  Brady exculpatory telephone records ....................................................................51

K.  All GPS tracking information regarding Defendants Aref and Hossain ..................52

L.  Defendant Hossain is entitled to disclosure of the government's expert witnesses..................52

M.  The government must be ordered to give notice of intent to use hearsay statements not specifically covered by the expectations to the hearsay rule.....................................53

N.  The Government Must Disclose Any Giglio Material ............................................53

O.  The Government Must Disclose Any Testifying Informant's Convictions ..............53

P.  Defendant Hossain is Entitled to a Suppression Hearing For Post-Arrest Statements Made By Defendant Hossain .........................................................................................53

Conclusion ..................................................................................................................54

## TABLE OF AUTHORITIES

**Cases**

Blumenthal v. United States, 332 U.S. 539, 92 L. Ed. 154, 68 S. Ct. 248 (1948) .................................... 23

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963) ................................................ passim

Bruton v. United States, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968) ..................................... 24

De Jong v. United States, 381 F.2d 725 (9th Cir. 1967) ................................................................... 8

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763; 31 L.Ed.2d 104 (1972) .................................... passim

Jacobson v. United States, 503 U.S. 540 (U.S. 1992), 118 L.Ed.2d 174, 112 S.Ct. 1535 (1992) ....... passim

Kotteakos v. United States, 328 U.S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946) ................................... 22

Matthews v. United States, 485 U.S. 58 (1988) ........................................................................... 3

Monroe v. Angelone, 323 F.3d 286 (4th Cir., 2003) ....................................................................... 50

Roviaro v. United States, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957) ...................................... 50

Strickler v. Greene, 527 U.S. 263 (U.S. 1999) ............................................................................ 45

United States v. Agurs, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976) ..................................... 45

United States v. Bagley, 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985) .............................. 45, 49

United States v. Bala, 1999 U.S. Dist. LEXIS 12529 (N.D.N.Y., 1999), 236 F.2d 87 (2nd Cir., 2000) . 2, 24

United States v. Blankenship, 775 F.2d 735 (6th Cir., 1985) ....................................................... 8, 9, 11

United States v. Bramble, 641 F.2d 681 (9th Cir. 1981), cert. denied, 459 U.S. 1072, 74 L. Ed. 2d 635, 103 S. Ct. 493 (1982) ....................................................................................................... 8

United States v. Crisona, 416 F.2d 107 (2d Cir., 1969) cert denied 397 U.S. 961, 90 S. Ct. 991, 25 L. Ed. 2d 253 (1970) ............................................................................................................. 30

United States v. Crump, 934 F.2d 947 (8th Cir. 1991) .................................................................. 9

United States v. Cummins, 969 F.2d 223 (6th Cir. 1992) ............................................................... 2

United States v. Figueroa, 618 F.2d 934 (2d Cir. 1980) ................................................................ 23

United States v. Gardell, 2001 U.S. Dist. Lexis 16118 (S.D.N.Y. 2001) ............................................ 22

United States v. Glover, 506 F.2d 291 (2d Cir. 1974) ................................................................... 24

United States v. Moussaoui, 302 F3d 453 (4th Cir., 2004) ....................................... 26, 38, 41, 53

United States v. Rosenwasser, 550 F.2d 806, (2d Cir.), cert. denied, 434 U.S. 825, 98 S. Ct. 73, 54 L. Ed. 2d 83 (1977) .................................................................................................. 23, 24, 25

United States v. Sanchez, 68 Fed. Appx. 283 (3d Cir. 2003) ......................................................... 50

United States v. Segovia, 576 F.2d 251 (9th Cir. 1978) ................................................................ 8

United States v. Sherwood, 527 F. Supp. 1001 (W.D.N.Y. 1981) .................................................... 31

United States v. Whoie, 288 U.S. App. D.C. 261, 925 F.2d 1481 (1991) .......................................... 13

United States v. Williams, 705 F.2d 603 (2d Cir., 1983) ...................................................... 4, 5, 13

**Statutes**

18 U.S.C. Appx. 3 §3 .................................................................................................... 27

USCS Fed Rules Crim Proc R 14 .................................................................................... 24

USCS Fed Rules Crim Proc R 16 .................................................................................... 30

USCS Fed Rules Crim Proc R 8 ..................................................................................... 21

## INTRODUCTION

This motion is divided into three sections.

Point I sets forth the argument of defendant Hossain (hereinafter referred to as "defendant Hossain") that the indictment must be dismissed against him on the grounds of (A) entrapment as a matter of law.

Point II sets forth defendant Hossain's argument that the court must (A) sever the trial of the indictment against defendant Aref (hereinafter referred to as "defendant Aref") from the trial of the indictment against defendant Hossain; and, if not granted, (B) sever the trial of Counts 28, 29 and 30 of the superceding indictment against defendant Aref from the joint trial of defendants.

Point III sets forth discovery issues and requests orders that (A) the government provide all pre-arrest oral statements made by defendants during interviews with government agents; (B) the government provide all written or tape recorded statements made by the defendants; (C) the government provide the transcripts of all tape recordings in its possession that will or may be used at trial or which are material to the preparation of the defense; (D) the government produce the FBI 302s with respect to all conversations or recordings created by the government pertaining to the defendants; (E) the government produce the notebook found in Iraq, together with specified materials related to the discovery of the notebook, and to identify and produce for deposition certain individuals who found and translated the notebook; (F) the government produce the complete criminal history of defendants, including the United States and overseas history; (G) the government provide Brady impeachment materials; (H) the government produce pursuant to Brady any preferential treatment accorded by the government to informant; (I) the government produce materials or information in its possession regarding defendant Hossain's lack of predisposition to

1

commit offenses charged; (J) the government produce <u>Brady</u> exculpatory telephone records; (K) the government produce all GPS tracking information regarding defendants Aref and Hossain; (L) the government disclose any expert witnesses it intends to produce at trial; (M) the government provide notice of intent to use hearsay statements not specifically covered by the exceptions to the hearsay rule; (N) the government must disclose any <u>Giglio</u> material; (O) the government disclose any testifying informant's convictions; and (P) the court set a suppression hearing for post-arrest statements by defendant Hossain.

## POINT I

### DEFENDANT HOSSAIN WAS ENTRAPPED AS A MATTER OF LAW, AND COUNTS 1 THROUGH 27 OF THE SUPERSEDING INDICTMENT ALLEGED AGAINST HIM MUST BE DISMISSED[1]

In <u>United States v. Cummins</u>, 969 F.2d 223 (6th Cir. 1992), the Court of Appeals held:

> *Generally, an entrapment defense presents a jury question. United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir. 1984).* **When, however, the testimony and facts pertaining to that issue are undisputed and the evidence "demonstrates a 'patently clear' absence of predisposition" to commit the charged crime, a court may find that a defendant is, as a matter of law, entrapped.** *United States v. Pennell, 737 F.2d 521, 534 (6th Cir. 1984), cert. denied, 469 U.S. 1158, 83 L. Ed. 2d 921, 105 S. Ct. 906 (1985).*

*See* <u>Cummins</u>, 969 F.2d at 228 (emphasis supplied).

This court has addressed entrapment as a matter of law in <u>United States v. Bala</u>, 1999 U.S. Dist. LEXIS 12529 (N.D.N.Y., 1999) at 236 F.2d 87 (2nd Cir., 2000). The court noted in <u>Bala</u> that there are two elements for an entrapment defense: government inducement of a crime and lack of predisposition on the part of the defendant to engage in the criminal conduct. <u>Bala</u>, citing <u>Matthews v. United States</u>, 485 U.S. 58, 63 (1988).

---

[1] Defendant Hossain reserves the right to present a defense other than entrapment at trial.

The government concedes the first entrapment element with respect to defendant Hossain. After initially implying concession at the third of three detention hearings, stating:

> . . . *in a sting case, the Second Circuit says, by definition, it's inducement . . . that's the Second Circuit law. If you have a sting, you have inducement.*

[*docket 145 at page 54* (emphasis supplied)], the government more specifically expressed its intention to concede the first entrapment element in framing its planned jury charge as follows:

> . . . *the Government **intends to propose jury instructions that concede inducement and move the jury directly to predisposition.***

[*Docket 119 at page 26* (emphasis supplied)]

With the concession of the first entrapment element, the government's case and burden turns to its obligation "to prove beyond a reasonable doubt that [defendant Hossain] was disposed to commit the criminal act **prior to first** being approached by government agents". *See* Jacobson v. United States, 503 U.S. 540, 548-549 (U.S. 1992), 118 L.Ed.2d 174, 112 S.Ct. 1535 (1992). The government has informed the court in its August 9, 2005 motion for a CIPA protective order that it will prove defendant Hossain's predisposition by the following[1]:

> *The government expects to show . . . predisposition by offering evidence, inter alia, of [his] accepting, without hesitation, the proposal to launder what were represented to be **the proceeds of a SAM sale to terrorists in New York City,** [his] willingness to conduct multiple laundering transactions without hesitation, Hossain's introduction of Aref into criminal activity, . . . Hossain's own words regarding the morality and propriety of the CW's actions in providing a SAM to terrorists, . . . Hossain's cautioning the CW about law enforcement, Hossain's admissions to the CW of hiding income from the IRS . . . and Hossain's solicitation of the CW to assist Hossain's*

---

[1] Defendant Hossain is treating the below disclosure as the government's generalized 404(b) notice of intent to offer evidence of prior bad acts. No additional prior bad acts have been suggested by the government, and, if the government intends to introduce any at trial, it is obliged to disclose them now.

3

> brother in fraudulently obtaining a permit for a New York State driver's license.[2]

[*Docket 119 at page 30* (emphasis supplied)]

These are insufficient bases as a matter of law for the government to prove predisposition.

Preliminarily, the conversations between the government informant[3] and defendant Hossain were conducted in the Urdu language. [*Luibrand affidavit at Exhibit "A"*] The government has informed the court that its case is based upon the tapes, stating "- - the case **is the tapes**. Whether it be a few other witnesses, but that's where you see it. That's where the focus of the pretrial preparation ought to be." [*Docket 145 at page 54* (emphasis supplied)] The translations of those taped conversations are contained in transcripts created by the government, and detailed hereafter. There is, therefore, a government-produced text of the conversations it will draw upon to purportedly prove the asserted action supporting the government's claim of predisposition.

In United States v. Williams, 705 F.2d 603 (2d Cir., 1983), the Second Circuit made clear that a defendant's predisposition is measured before the informant suggests that the target become involved in criminal activity:

> A defendant's predisposition is **not** to be assessed "as of that time when he committed the crime." Normally, predisposition refers to the state of mind of a defendant **before** government agents make any suggestion that he should commit a crime.

*See* Williams, 705 F.2d at 618 (2d Cir. 1983). *See also* United States v. Khubani, 791 F.2d 260 (2d Cir., 1986). In Jacobson, the Supreme Court stated:

_____

[2] Deleted from the text are references to defendant Aref's predisposition since defendant Hossain does not assume predisposition characterizations of another simply because there may be evidence that defendant Aref is predisposed.

[3] The name of the informant is not used in this text although it has appeared in numerous newspaper articles [*Luibrand affidavit at Exhibit "B"*], has been identified by **his** attorney in bankruptcy filings, and is living openly in the area.

4

> *Indeed,* **the proposition that the accused must be predisposed _prior to_ contact with law enforcement officers is so firmly established that the Government conceded the point at oral argument,** *submitting that the evidence it developed during the course of its investigation was probative because it indicated petitioner's state of mind prior to the commencement of the Government's investigation.*

*See* Jacobson, 503 U.S. at 549 (emphasis supplied).

Of the government's asserted evidence of defendant Hossain's predisposition, only two subjects purportedly occurred "prior" (*see* Jacobson, id.; Williams, id.) to the government's inducement - "Hossain's admission to the CW of hiding income from the IRS"[4] and "Hossain's solicitation of the CW to assist Hossain's brother in fraudulently obtaining a permit for a New York State driver's license"[5]. [*Docket 119 at page 30*] Neither of those two subjects is supported in the text of the transcripts and neither is evidence, as a matter of law, that defendant Hossain was "disposed to commit the crime" of providing material support to terrorists. *See* Jacobson, id.

## A.    Defendant Hossain's Alleged Hiding of Pizza Business Income

Here is the complete extent of any conversation between the government informant and defendant Hossain related to defendant Hossain purportedly hiding pizza business income as contained in the government's version of the transcript, which conversation took place on January 2, 2004:

> CW:    *If you made money, you must pay. Thats the American law, right? But if you have to receive sales tax from the people you must give them back because thats the holding of sales tax.*
>
> MH:    *No, thats already, already, the people money, I already paid*

---

[4] The conversation with the informant took place on January 2, 2004 [*Luibrand affidavit at Exhibit "C"*], and related to defendant Hossain's pizza business prior to that date. The alleged first criminal act occurred on January 2, 2004.

[5] This conversation with the informant took place on August 7, 2003. [*Luibrand affidavit at Exhibit "D"*]

5

*them. Thats what I am saying.*

CW:    *Uh-hum*

MH:    *Like if what sometime, (UI) sometime 2000*

CW:    *The same with me too, you know, if I do phone card business, which I do phone cards business, the people pay me, I have to claim to the, the sales tax, like this is a holding sales tax. I have to give them back but there's some stuff that I don't give them because they are not entitled to that. It goes right into my income, income of them, how much I paid because the DBA, doing business as, its like another corporation.*

MH:    *(UI)* **Delivery I don't show because I don't, I don't claim that my gas money, I don't claim my insurance money, my car insurance, and etcetera, and things like that, you know, so therefore I am thinking because of the delivery and I am not.**

CW:    **How much, how much delivery do you do?**

MH:    **uh, like uh , usually, usually, like 7, $800, delivery** *(UI)*

CW:    **A day.**

MH:    **yeah, but right now...**

CW:    *(UI)* **seven hundred, eight dollars, comes up to...**

MH:    **Not every day** *(UI)* **like 500**

CW:    **Okay, lets do 500, okay, so 500 times 30, comes to $15,000**

MH:    **$15,000. But right now** *(UI)*

CW:    **uh-hum**

MH:    *(UI)* **300, 250**

[*Luibrand affidavit at Exhibit "C"* (emphasis supplied)]

Apart from the question of intelligibility (there are seven sections of unintelligible conversation within less than a page of transcription and the dialogue is cryptic), this is not factual evidence that supports the argument advanced by the government of predisposition to commit the

crime of providing material support to terrorists.  A fair reading of the transcript - noting that since the tape is in Urdu, this text is **exactly** what the jury would have before it from the government - is defendant Hossain stating "(UI) delivery money I don't show" - seemingly meaning money from delivering pizzas - "because I don't claim that [sic] my gas money, I don't claim my insurance money, my car insurance, and etcetera" - meaning he does not include his expenses of delivery, either, as credits against income.  The government's conclusion is that defendant Hossain states that he does not declare either the income or the expenses on deliveries on his tax return.

Evidence of the government that defendant Hossain does not include pizza delivery income because he also does not include expenses is not, as a matter of law, evidence of "predisposition to commit the crime of" providing material support to terrorists.  *See* Jacobson, id.  In Jacobson, the defendant had purchased illegal child pornography in a sting operation.  To support the predisposition, the government introduced evidence of his "inclinations and fantasies" involving child pornography.  The Court held those purchases not to establish predisposition "to commit the criminal act".  Id.

The focus is not **any** criminal act, but **the** criminal act for which he is charged.  In United States v. Blankenship, 775 F.2d 735 (6th Cir., 1985), the Sixth Circuit stated:

> *The introduction of evidence of extrinsic offenses is a reliable method of proving the criminal predisposition needed to rebut the allegation or inference of entrapment." However, **such evidence is not admissible to prove a predisposition to commit criminal acts generally**. That would be proof of bad character for the purpose of showing that the defendant acted in accordance with such general criminal propensity in the instance charged. **The use of such evidence to show predisposition is permitted only when the other crimes are of the same nature as those charged**. This rule was clearly set forth in United States v. Bramble, 641 F.2d 681, 682 (9th Cir. 1981), cert. denied, 459 U.S. 1072, 74 L. Ed. 2d 635, 103 S. Ct. 493 (1982):*

> *The rule in this circuit is that "where entrapment is in issue evidence of prior crimes is not relevant unless it tends to prove that defendant was **engaged in illegal operations in some way similar to those charged in the indictment**." United States v. Segovia, 576 F.2d 251, 252 (9th Cir. 1978), quoting De Jong v. United States, 381 F.2d 725, 726 (9th Cir. 1967).*

Blankenship, 775 F.2d at 739 (emphasis supplied). The court then found evidence of the defendant's earlier thefts of property and his proposals for burglarizing houses not evidence of predisposition in an entrapment defense to a weapons charge. The court held:

> *This evidence, unlike that related to earlier firearms transactions and discussion of possible future dealings in weapons, **did not satisfy the requirement of substantial similarity to the offenses charged.** It merely demonstrated the general criminal character of Blankenship. The government appears to argue that such a use of "other crimes" evidence is permissible where a defendant claims entrapment. It states in its brief in this court that evidence of Blankenship's voluntary solicitation of Thompson and Berareducci to commit burglaries and cut him in gave "insight into the sort of person the defendant is." **Proof that the defendant has committed thefts in the past and is willing to share in the proceeds of a projected burglary has little if any probative value with respect to the issue of his predisposition to receive, possess or deal in firearms. On the other hand, this evidence is fraught with danger of undue prejudice. Thus it fails both tests for the admissibility of other crimes evidence.***

Blankenship, 775 F.2d at 740. (*See also* United States v. Crump, 934 F.2d 947, 954 (8th Cir. 1991): the offenses must be "similar in kind and reasonably close in time to the crime charged".)

It is ridiculous for the government to claim that it will prove predisposition on defendant Hossain's part of providing "material support to terrorists" because he allegedly fails to include the delivery money from his pizza business income on his tax return. Under that argument, every waiter/waitress, every cash mom and pop store that does not include **all** its cash for income-reporting purposes is predisposed to "provide material support to terrorists". There is no case where such evidence has been held to prove such a nexus to predisposition.

8

**B.**    **Defendant Hossain's Solicitation of the Informant to Assist Defendant Hossain's Brother in Fraudulently Obtaining a Permit For a New York State Driver's License**

The background of the permit is relevant.  Defendant Hossain's adult brother is mentally disabled.  After the World Trade Center bombing, the brother became afraid and decided that he would walk home to Bangladesh.  He left Albany, followed the train tracks from downtown Albany to the Albany Airport, where he was later discovered and placed into custody.  He had no identification on him, and had no way to effectively communicate who he was so he could be returned home to defendant Hossain, who was his caregiver.  It would have been helpful if he had an ID.

The government's transcripts contradict the government's claim that defendant Hossain solicited the informant to fraudulently obtain a driver's permit for his brother.  Instead, the transcript reveals that the informant solicited defendant Hossain, and that the informant told defendant Hossain on August 7, 2003, that it was **legal** for the informant to help defendant Hossain's brother obtain an ID card for his brother.

The government informant, whose prior offenses relate, in part, to illegally obtaining DMV permits, pressed defendant Hossain to get an "ID" for his brother:

> *CW:*    *This we will do later... there are two steps to obtain a driver license.  One is written second is driving test.* **At written stage we can get ID.**  *Which document do you show as his ID?*
>
> *MH:*    *He has green card.*
>
> *CW:*    **But green card is not an ID.  You need an ID.**  *When you get an ID, why not you get a driving license.* **This is same thing. Ask him to go with me to Motor Vehicle Department on Tuesday.  It will take five minutes to make an ID.**  *I want to oblige you.  I want to buy your business and learn business tactics from you.  I want to buy your business.*

[*Luibrand affidavit at Exhibit "D"* (emphasis supplied)]  In the transcripts, the confidential witness

encourages defendant Hossain to allow the confidential witness to help defendant Hossain's brother:

> CW:   I am trying to get his documents.  To drive a car or not to drive a car is his own decision.  **I will get a document, an ID.**

[*Luibrand affidavit at Exhibit "D"*]

Defendant Hossain tells the informant on the government's version of the translation that his brother could not get a permit because he is not mentally able:

> MH:   I'm telling you the truth about my brother.  He has a defect and he is silly by birth.
>
> * * * * *
>
> MH:   He is just a slow learner.
>
> CW:   Yes, he's just slow.
>
> MH:   He's very slow.
>
> CW:   Yes, yes.
>
> MH:   Not just slow, VERY slow.

[*Luibrand affidavit at Exhibit "D"*]  But, the informant tells defendant Hossain that what he is doing for the brother **is legal**:

> CW:   . . . We test him.  We do everything.  Because I am an official translator.  **Are you looking at this letter?  This is me.  It reads that I will translate for him.  All peoples around you have passed in a similar way.  This is not illegal.**
>
> MH:   But he doesn't know how to hold a steering.
>
> CW:   He needs to learn ten lessons...  we will teach him rest of the process.  This is our duty.  Even women know this.  What are you thinking?  Illiterate women could pass this test.

[*Luibrand affirmation at Exhibit "D"*]  This evidence by the government is not predisposition to engage in any criminal behavior.  It is certainly not evidence that defendant Hossain is predisposed to commit the crime of providing material support to terrorists, nor is it "the same nature of those

charged". *See* <u>Blankenship</u>, <u>id</u>.

## C.    Defendant Hossain's Alleged Introduction of Aref Into Criminal Activity

The government alleges that it will prove defendant Hossain's predisposition by "Hossain's introduction of Aref into criminal activity". [*Docket 119 at page 30*] That is not factually supported in the record, and again, does not establish <u>Jacobson</u> predisposition.

First, defendant Hossain did not introduce defendant Aref into the transaction in a vacuum. Rather, defendant Hossain suggested defendant Aref after the informant first told defendant Hossain that there was a profile of Muslim people that the informant did not want as the witness to the loan, leaving defendant Aref who was the spiritual leader of the Albany mosque:

> CW:    *You said that Islam... but you said there would be a witness.*
> *To me - don't make any Pakistani a witness, nor any*
> *Bangladeshi nor anyone from India [Laughs]. Don't make any*
> *one of these people a witness.*

[*Luibrand affidavit at Exhibit "E"*] Defendant Hossain asks the government informant if he would like defendant Aref as a witness, at which time the informant expresses overwhelming desire:

> MH:    *Brother YASEEN [UI].*
>
> CW:    *Huh?*
>
> MH:    *Brother YASEEN.*
>
> CW:    *Wonderful. He's wonderful.*
>
> MH:    *He is trustworthy.*
>
> CW:    *Wonderful. Wonderful. You made me happy. A person like*
> *Brother YASEEN - wonderful!*
>
> MH:    *Right... God...he is an Imam...always speaks truth...*
>
> CW:    *Wonderful.*

[*Luibrand affidavit at Exhibit "E"*]

11

Second, the government's assertion that "Hossain introduc[ed] Aref into criminal activity" is only relevant to predisposition if defendant Hossain had knowledge of criminal activities on the part of defendant Aref related to providing material support to terrorists. That is, if defendant Hossain contacted the local notary public to notarize the loan documents, that introduction of the notary would have no relevance to the government proving predisposition of defendant Hossain to launder money for terrorism purposes. So, why does the alleged introduction by defendant Hossain of defendant Aref show predisposition? If the government claims that "involving Aref" is proof of defendant Hossain's predisposition, the government would have to show that defendant Hossain knew that defendant Aref was engaged in criminal behavior. The government has no such proof in any of the transcripts or otherwise. So, while it may be admissible that defendant Hossain at the urging of the informant involved defendant Aref, that fact is not evidence of predisposition to commit the crime of providing material support to terrorists.

### D.    The Remainder of the Predisposition Evidence All Occurred During the Alleged Loan Offenses and is Not "Predisposition"

The Supreme Court in Jacobson requires that the predisposition exist "prior to first being approached by Government agents". Jacobson, 503 U.S. at 549 citing United States v. Whoie, 288 U.S. App. D.C. 261, 263-264, 925 F.2d 1481, 1483-1484 (1991). More specifically, in Jacobson, the Supreme Court held that "although [the defendant] had become predisposed to break the law by May 1987, it is our view that the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at [defendant] since January 1985" (citation omitted). Jacobson, 503 U.S. at 550. That is, once the defendant is allegedly in violation of the law, that is not the "point to determine if he is predisposed". In United States v. Williams, id., the Second Circuit held:

12

> *A defendant's predisposition is **not** to be assessed "as of that time when he committed the crime." Normally, predisposition refers to the state of mind of a defendant **before** government agents make any suggestion that he should commit a crime.*

See Williams, 705 F.2d at 618 (2d Cir. 1983).

Defendant Hossain requests an order dismissing the indictment on the grounds of the absence of lawful and admissible predisposition evidence on the government's part, and, if the motion is denied, an order precluding the government from introducing alleged evidence of defendant Hossain's alleged exclusion of pizza business delivery income from his tax return and evidence pertaining to the informant obtaining a driver's permit for defendant Hossain's brother.

## POINT II

## THE TRIAL OF THE CASE AGAINST DEFENDANT AREF MUST BE SEVERED FROM THE TRIAL AGAINST DEFENDANT HOSSAIN PURSUANT TO U.S.C.S. FEDERAL RULES OF CRIMINAL PROCEDURE RULES 8(a) and (b) and 14

*Factual Predicate for Severance*

Set forth below is a chart showing the charges alleged against defendants Aref and Hossain taken directly from the superceding indictment:

> ***COUNT 1:*** *Beginning in or about December 2003 and continuing through and including August 2004, in the State and Northern District of New York, defendants YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN knowingly and intentionally combined, conspired, confederated, and agreed with each other to violate Title 18, United States Code, Section 1956(a)(3)(B).*

> ***COUNTS 2-11:*** *On or about each of the dates set forth below[6], in the State and Northern District of New York, defendants*

---

[6] Count 2 relates to a check in the amount of $2,000.00 written and delivered on January 2, 2004 in alleged violation of 18 U.S.C. §922(a)(1); Count 3 relates to a check in the amount of $2,000.00 written and delivered on January 21, 2004 in alleged violation of 18 U.S.C. §922(a)(1); Count 4 relates to a check in the

*YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN, each aiding and abetting the other, with the intent to conceal and disguise the nature, location, source, ownership, and control, of property believed to be the proceeds of specified unlawful activity, knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce involving property represented by another person acting at the direction and with the approval of a Federal official authorized to investigate or prosecute violations of Title 18, United States Code, Section 1956, to be proceeds of specified unlawful activity.*

*COUNT 12: Beginning in or around February 2004, and continuing through and including June 2004, in the State and Northern District of New York, defendants YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN knowingly and intentionally combined, conspired, confederated, and agreed with each other to violate Title 18, United States Code, Section 2339A.*

*COUNTS 13-19: On or about each of the dates set forth below[7], in the State and Northern District of New York, defendants YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN attempted to conceal and disguise the nature, location, source, and ownership of material support and resources, knowing that they were to be used in preparation for, and in carrying out, a violation of Title*

---

amount of $2,000.00 written and delivered on February 12, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(B); Count 5 relates to a check in the amount of $6,000.00 written and delivered on February 13, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); Count 6 relates to a check in the amount of $2,000.00 written and delivered on March 31, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); Count 7 relates to a check in the amount of $5,000.00 written and delivered on April 16, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); Count 8 relates to a check in the amount of $2,000.00 written and delivered on May 4, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); Count 9 relates to a check in the amount of $2,000.00 written and delivered on June 1, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); Count 10 relates to a check in the amount of $2,000.00 written and delivered on July 1, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B); and Count 11 relates to a check in the amount of $2,000.00 written and delivered on August 3, 2004 in alleged violation of 18 U.S.C. §§922(a)(1) and 2339(A) and (B).

[7] Count 13 relates to the check in the amount of $6,000.00 written and delivered on February 13, 2004; Count 14 relates to the check in the amount of $2,000.00 written and delivered on March 31, 2004; Count 15 relates to the check in the amount of $5,000.00 written and delivered on April 16, 2004; Count 16 relates to the check in the amount of $2,000.00 written and delivered on May 4, 2004; Count 17 relates to the check in the amount of $2,000.00 written and delivered on June 1, 2004; Count 18 relates to the check in the amount of $2,000.00 written and delivered on July 1, 2004; and Count 19 relates to the check in the amount of $2,000.00 written and delivered on August 3, 2004.

14

*18, United States Code, Section 2332a, and aided, abetted, and caused such attempt.*

**COUNT 20:** *Beginning in or around February 2004, and continuing through and including June 2004, in the State and Northern District of New York, defendants YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN knowingly and intentionally combined, conspired, confederated, and agreed with each other, to violate Title 18, United States Code, Section 2339B.*

**COUNTS 21-27:** *On or about each of the dates set forth below[8], in the State and Northern District of New York, defendants YASSIN MUHIDDIN AREF and MOHAMMED MOSHARREF HOSSAIN, knowing that Jaish-E-Mohammed (hereinafter "JEM") was a designated terrorist organization, that JEM engages in or has engaged in terrorist activity, and that JEM engages in or has engaged in terrorism, attempted to provide material support and resources to JEM, a foreign terrorist organization, and aided, abetted such attempt.*

It is the government's stated intention to overwhelm the record with 404(b) evidence of defendant Aref's purported predisposition (even though defendant Aref may not have an entrapment defense), and direct proof establishing Counts 28 through 30 - which are unrelated to the indictment and have no relationship to defendant Hossain - and a litany of other asserted 404(b) bad acts attributed solely to defendant Aref.

The 28th through 30th counts, alleged against defendant Aref, only, are factually described in the indictment as follows:

**COUNT 28:** *On or about February 13, 2002, at or near Albany, in the State and Northern District of New York,*

---

[8] Count 13 relates to the check in the amount of $6,000.00 written and delivered on February 13, 2004; Count 14 relates to the check in the amount of $2,000.00 written and delivered on March 31, 2004; Count 15 relates to the check in the amount of $5,000.00 written and delivered on April 16, 2004; Count 16 relates to the check in the amount of $2,000.00 written and delivered on May 4, 2004; Count 17 relates to the check in the amount of $2,000.00 written and delivered on June 1, 2004; Count 18 relates to the check in the amount of $2,000.00 written and delivered on July 1, 2004; and Count 19 relates to the check in the amount of $2,000.00 written and delivered on August 3, 2004.

15

defendant *YASSIN MUHIDDIN AREF* did knowingly and willfully subscribe as true under penalty of perjury a false statement with respect to a material fact in a Form I-485 Application to Register Permanent Resident or Adjust Status, required by the immigration laws or regulations prescribed thereunder, and did knowingly present such Application which contained such false statement, to wit, defendant answered "None" to question C, which reads: "List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society or similar group in the United States or in any other places since your 16th birthday, ... " whereas, in truth and in fact, as the defendant then well knew when he signed the application under penalty of perjury, **after his 16th birthday defendant had been a member of or affiliated with the Islamic Movement in Kurdistan, an armed Islamic Movement seeking to establish an Islamic government in Iraq**. All in violation of Title 18, United States Code, Section 1546.

**COUNT 29**: On or about August 5, 2004, at or near Albany, in the State and Northern District of New York, defendant YASSIN MUHIDDIN AREF, in a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation, did **knowingly and willfully make a materially false, fictitious and fraudulent statement, to wit, when interviewed by FBI agents, defendant denied that he had been a member or part of the Islamic Movement in Kurdistan**, whereas, in truth and in fact, as the defendant then well knew, he had been a member or part of the Islamic Movement in Kurdistan, **an armed Islamic Movement seeking to establish an Islamic government in Iraq**. All in violation of Title 18, United States Code, Section 1001.

**COUNT 30**: On or about August 5, 2004, at or near Albany, in the State and Northern District of New York, defendant YASSIN MUHIDDIN AREF in a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation, did knowingly and willfully make a false, fictitious and fraudulent statement, to wit, defendant, after acknowledging to FBI agents that **he knew Mullah Krekar was a famous person and founder of the terrorist organization Ansar al Islam, denied that he knew Mullah Krekar personally, whereas, in truth and in fact, as the defendant then well knew, he did know Mullah Krekar personally**, and had spoken to and had met

16

> with Mullah Krekar. All in violation of Title 18, United States Code, Section 1001.

[*Docket 134* (emphasis supplied)]

The government has also stated its intention to offer the following materials independent of

Counts 28 through 30, and pertinent to defendant Aref only:

> . . . during the year 2001 . . . defendant Aref . . . transferred **between $15,000.00 and $18,000.00 to Iraq.** He also . . . was telling Albany County Department of Social Services that he was making $200.00 a month and that was his sole source of income. He also wired . . . **$1,300.00 to an individual in Greece. This person . . . was arrested six months after the wire transfer** by Greek police in connection with what sounds like **a fraudulent document possession and manufacturing operation.**

[*Docket 58 at page 32* (emphasis supplied)]

> The government expects to show . . . **predisposition by offering evidence, inter alia, of . . . Aref's speeches, sermons and affiliations, . . . Aref's misreporting of his income and resources to obtain public benefits** . . .

[*Docket 119 at page 30* (emphasis supplied)]

> Aref has engaged in **mail fraud** in violation of Title 18, United States Code, Section 1341 . . . The mail fraud investigation regards Aref's misrepresentations to the ACDSS . . . These misrepresentations have caused ACDSS **to provide Aref with food stamp benefits and other financial assistance to which he was not entitled . . . Aref did not report several thousand dollars of income that he earned working as an Imam from September 2000 to September 2001** . . . ACDSS Welfare Fraud Investigators have advised the FBI that if Aref earned unreported income of $15,000.00 . . . it would have caused them to pay Aref thousands of dollars in food stamps benefits to which he was not entitled . . . **Aref failed to report to ACDSS rental income that appears to have been received as a result of renting out a lower level apartment at his residence** at 44 West Street . . . Aref appears to have transferred between **$15,000.00 and $18,000.00 to Iraq through an individual in Atlanta during 2001**, the same year that he failed to report

17

*over $10,000.00 in income earned as his job as an Imam . . . In addition, . . . on 05/19/00, Aref . . . wire transferred $1,300.00 to an individual by the name of Houssain Dilsoz Ali in Athens, Greece. The Greek Hellenic National Police have advised the FBI that Houssain Dilsoz Ali was arrested on November 14, 2000 along with six other Iraqis for being in possession of and making false documentation, to include ID cards, resident permits and passports.*

[*Luibrand affidavit at Exhibit "F", pages 13-18* (emphasis supplied)]

> . . . **Mr. Aref came to the United States as a representative of the IMK** . . . **Mr. Aref actually documented in his diary numerous contacts with Mullah Krekar** . . . **a founder of this organization, Ansar al-Islam, a terrorist organization, which is responsible for numerous terrorist attacks** . . . *Mr. Aref filled out a refugee application . . . he was asked a question "Are you a member of or affiliated with any political organizations since your 16th birthday, including overseas?" Answer, "None." . . . Mr. Aref had a meeting in 1999, about a week before he came to the U.S., with one of the leaders of the HAMAS terrorist organization.* **It's a very high-level connection he had at the time** . . . *very disturbing entries in the journal, some poems he wrote and* **glorification of bloodshed** . . . *all those things taken together, demonstrate dangerousness, exceptional dangerousness.*

[*Docket 145 at 16-22* (emphasis supplied)]

> *. . . defendant Aref did knowingly and willfully subscribe as true under penalty of perjury a false statement with respect to a material fact in a Form I-485 Application to Register Permanent Resident or Adjust Status, and did knowingly present such Application which contained such false statement . . .* **defendant had been a member of or affiliated with the Islamic Movement in Kurdistan, an armed Islamic Movement** *seeking to establish an Islamic government in Iraq. All in violation of Title 18, United States Code, Section 1546 . . . defendant Aref . . . did knowingly and willfully make a materially false, fictitious and fraudulent statement, to wit, when interviewed by FBI agents, defendant denied that he had been a member or part of the Islamic Movement in Kurdistan . . . in violation of Title 18, United States Code, Section 1001 . .*

18

> *. defendant Aref . . . did knowingly and willfully make a false, fictitious and fraudulent statement, to wit, defendant, after acknowledging to FBI agents that he knew Mullah Krekar was a famous person and founder of the terrorist organization Ansar al Islam, denied that he knew Mullah Krekar personally . . . **he did know Mullah Krekar personally, and had spoken to and had met with Mullah Krekar** . . . in violation of Title 18, United States Code, Section 1001.*

[*Docket 134 at pages 14-16*]

The government has also claimed it will connect defendant Aref to a terrorist camp in northern Iraq:

> *. . . as to defendant Aref in particular, his name in June of 2003, we've been informed by the Department of Defense, was recovered and found in a **notebook following a raid on a terrorist camp** in -- near Rawa (sic), Iraq . . . Included in that notebook were the names of various individuals. The notebook was found along with other pocket litter, rocket propelled grenades, from my understanding, **shoulder-fired missiles**, and small arms and weapons manuals. And in that notebook was included an for the name Yassin Aref . . . underneath it a title, Commander Yassin[9], New York, United States.*

[*Docket 21 Exhibit "A"* (emphasis supplied)]

The above facts against defendant Aref is 404(b) material that would never be allowed in a trial against defendant Hossain, only. The government does not allege nor could it prove that defendant Hossain had any knowledge or participation in any of the above outlined acts purportedly attributed to defendant Aref. Yet, the government intends to introduce evidence, and some related to crimes charged against defendant Aref in Counts 28 through 30, some uncharged, and then, necessarily, the predisposition acts of defendant Aref will spill over to defendant Hossain.

---

[9] This "Commander" reference was later changed by the government (Point III(E) hereafter), but the references to defendant Aref's connection remain part of the government's claimed proof (Point III(E) hereafter).

19

Below is defendant Hossain's argument that Counts 28 through 30 of the superseding indictment against defendant Aref, only, were not properly joined to the indictment against defendant Hossain, and the 404(b) evidence the government has claimed it will present regarding defendant Aref - evidence to apparently prove his predisposition - will have "a prejudicial spill-over effect" upon defendant Hossain, requiring severance of the trial of defendant Aref from defendant Hossain.

**A.    Counts 28 Through 30 Should Not Have Been Joined to the Indictment Against Defendant Hossain in the First Instance**

U.S.C.S. Federal Rules of Criminal Procedure Rule 8(a) reads, in pertinent part, as follows:

> *Rule 8.  Joinder of Offenses or Defendants.    (a) Joinder of Offenses.  The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--* **are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.**

USCS Fed Rules Crim Proc R 8 (emphasis supplied).

U.S.C.S. Federal Rules of Criminal Procedure Rule 8(b) reads, in pertinent part, as follows:

> *Rule 8.  Joinder of Offenses or Defendants.    (b) Joinder of Defendants.  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.*

USCS Fed Rules Crim Proc R 8.

> *1.    The Offenses Charged in Counts 28 Through 30 of the Superseding Indictment Are Not of the Same or Similar Character*

The offenses charging defendant Aref with 18 U.S.C. §§1001 and 1546 are not of the same or similar character as the principal core of the indictment which relates to alleged violations of 18

20

U.S.C. §1956(h), 18 U.S.C. §§1956(a)(3)(B) & 2, 18 U.S.C. §2339A and 18 U.S.C. §§2339A & 2.  At counts 28, 29 and 30 of the superceding indictment, the government alleges against defendant Aref, only, facts related to false statements made by defendant Aref on an immigration form entitled Form I-485 Application to Register Permanent Resident or Adjust Status, an alleged violation of 18 U.S.C. §1546; making a materially false, fictitious and fraudulent statement when interviewed by FBI agents on August 5, 2004 with respect to his alleged membership in an organization in Kurdistan; and denying knowledge that he knew an individual named Mullah Krekar, alleged violations of 18 U.S.C. §1001.

2.      *Counts 28 Through 30 of the Superseding Indictment Are Not Based Upon the Same Act or Transaction*

It is clear from reading the superseding indictment that the government does not allege that Counts 28 - 30 were based upon the same act or transaction.  Defendant Hossain is not alleged to have nor could he have had specific knowledge or participation in defendant Aref's preparation of his immigration forms (Count 28), his statements regarding participation with a Kurdistan group (Count 29), or his knowledge of Mullah Krekar (Count 30).  The allegations against defendant Hossain are related solely to the transactions involving the loan of money by the government to defendant Hossain, and the payback plan established by the government involving defendant Hossain making monthly payments of $2,000.00 on or about the first day of each month.  [*Docket 134*]

3.      *Counts 28 Through 30 of the Superseding Indictment and the Remaining Charges Are Not Connected With or Constitute Parts of a Common Scheme or Plan*

The common scheme or plan alleged against defendants by the government is specifically alleged as a conspiracy in superceding indictment Counts 2 through 11, 12 and 13 through 19. [*Docket 134*]  That conspiracy relates solely to the conduct of the defendants involving the loan and its payback plan.  The government does not allege in the text of the superceding indictment, nor in

21

the prior CIPA motion [*docket 119*], that Counts 28 - 30 have any role as part of any common scheme or plan by defendant Aref with anyone else, and certainly not with respect to defendant Hossain.

**B.      The Substantial Body of 404(b) Prior Bad Act Materials and Other Evidence Claimed By the Government Against Defendant Aref Requires Severance of the Trials**

"The potential for unfair prejudice associated with the admission of Rule 404(b) evidence is magnified when multiple defendants are tried together." *See* U.S. v. Gardell, 2001 U.S. Dist. Lexis 16118 (S.D.N.Y. 2001). The "dangers of transference of guilt" are such that a court should use "every safeguard to individualize each defendant in his relation to the mass." Kotteakos v. United States, 328 U.S. 750, 774, 773, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946). *See* Blumenthal v. United States, 332 U.S. 539, 559-560, 92 L. Ed. 154, 68 S. Ct. 248 (1948), citing to United States v. Mardian, 178 U.S. App. D.C. 207 (D.C. Cir. 1976). In United States v. Figueroa, 618 F.2d 934, 944 (2d Cir. 1980), the Second Circuit stated "[t]here are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant", citing United States v. Rosenwasser, 550 F.2d 806, 814 (2d Cir.) (dissenting opinion), cert. denied, 434 U.S. 825, 98 S. Ct. 73, 54 L. Ed. 2d 83 (1977). The Figueroa court established the analysis which the trial court must conduct to determine a severance motion for multiple defendants:

> *In assessing the risk to a co-defendant of prejudice created by evidence admitted in a joint trial solely against another defendant, the trial court must balance interests somewhat differently than when it makes this assessment in the trial of one defendant.* **The trial judge must weigh not only the probative value and the risk of unfair prejudice to the defendant against whom the evidence is offered, but also the appropriateness of permitting the prosecution to introduce the evidence in a joint trial. Evidence that might be admissible under Rule 403 in a trial of one defendant is not inevitably admissible in a joint trial.**

Figueroa, 618 F.2d at 945 (emphasis supplied).

22

Pursuant to <u>Figueroa</u> and U.S.C.S. Federal Rules of Criminal Procedure Rule 14(a), defendant Hossain is prejudiced by the joint trial of the counts against defendants Aref and Hossain:

> *Rule 14. Relief from Prejudicial Joinder. (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial* **appears to prejudice a defendant** *or the government, the court may order separate trials of counts,* **sever the defendants' trials**, *or provide any other relief that justice requires.*

USCS Fed Rules Crim Proc R 14 (emphasis supplied).

Initially, the government has an obligation to disclose what 404(b) evidence it will offer at trial to determine its effect upon defendant Hossain's right to a fair trial. *See* <u>Bruton v. United States</u>, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968)[10]. The government has described some asserted 404(b) material, but has not set forth an exhaustive list against which to measure its impact upon defendant Hossain. The material that has been provided is sufficient to demand severance of the trials.

Defendant Hossain has a viable entrapment defense, recognized as such by both the government and United States Magistrate Judge David R. Homer.[11] *See* Point I hereinabove. The government would have to prove defendant Hossain's predisposition. *See* <u>United States v. Bala</u>, 1999 U.S. Dist. LEXIS 12529 (N.D.N.Y., 1999) at 236 F.2d 87 (2nd Cir., 2000). The government has claimed to have large blocks of highly inflammatory evidence against defendant Aref, described in detail at

---

[10] "On a pre-trial motion to sever in a multiple defendant case, the trial judge should elicit from the Government what evidence it intends to offer regarding an alleged similar offense by one defendant which has a spill-over likelihood with respect to another defendant." See <u>Bruton v. United States</u>, *supra*; see <u>United States v. Glover</u>, 506 F.2d 291, 298 (2d Cir. 1974). "If the spill-over is likely to be prejudicial to the other defendant, the Court should give the Government the choice of a severance or of exclusion of the prejudicial evidence if the Government opts for a joint trial." *See* <u>United States v. Rosenwasser</u>, 550 F.2d 806, 812-813 (2d Cir. 1977).

[11] As set forth earlier, defendant Hossain reserves the right to not raise entrapment until such time as the government complies with all disclosure obligations and all tapes are fully transcribed.

23

pages 17 to 19 hereinabove. That purported proof includes connections of defendant Aref to overseas terrorist organizations, continued communication with such organizations upon reaching the United States, allegedly illegally channeling money to Iraq, being associated with an alleged violent terrorist group known as Ansar al-Islam, and other related actions all themed with terrorism. [*Docket 119 at page 30*] The September 30, 2005 detention hearing revealed the materiality of the allegations by the government above, sufficient so that Magistrate Judge David R. Homer found that defendant Aref "not only espouses, has adopted and believes in the goals of terrorist organizations, but that he has had an ongoing and continuing relationship with such organizations and with individuals associated with such organizations going back ten years". [*Docket 145 at page 62*]. The alleged "bad acts" of defendant Aref all have alleged "terrorist" messages in language and action, and will have an unavoidable "spill over" effect upon defendant Hossain if presented at the same time. *See* Rosenwasser, id. The effect upon defendant Hossain would be overwhelming, and prejudice is not avoided by a curative charge. Defendant Hossain is a Muslim allegedly involved in crimes surrounded by religious overtones. The discussion in the trial from the transcripts includes references to "jihads" and "religious" wars, Middle East politics and suppression of Muslims could not be separated from the evidence to be presented by the government against defendant Aref.

Defendant Hossain requests an order severing the cases for trial, and, if not granted, severing Counts 28 through 30 from the trial and precluding the government from utilizing evidence of defendant Aref's alleged conduct unrelated to Counts 1 through 27 charged against defendant Hossain.

POINT III

Pursuant to Rule 12(b)(3)(E) of the Federal Rules of Criminal Procedure, defendant Hossain moves to compel discovery from the government pursuant to Rule 16 of the Federal Rules of Criminal Procedure, defendant's September 7, 2004 notice to produce, Brady v. Maryland, 373 U.S. 83; 83 S.Ct. 1194, 10 L.Ed. 215 (1963) and United States v. Mouassoui, 302 F3d 453 (4th Cir., 2004).

**DEFENDANT MOHAMMED MOSHARREF HOSSAIN IS ENTITLED TO PRODUCTION OF SPECIFICALLY REQUESTED BRADY MATERIAL AND MATERIAL "RELEVANT AND HELPFUL TO THE DEFENSE . . . OR ESSENTIAL TO A FAIR DETERMINATION OF THE CASE"**

♦ *Discovery Background* ♦

Disclosure has advanced incrementally from the government.  On the 20th day of August, 2004, United States Magistrate Judge David R. Homer ordered the government to produce to the defendants the following materials in anticipation of the August 24, 2004 detention reconsideration hearing:

> . . . one set of copies of the audio and video recordings of meetings and conversations between the cooperating witness and Aref and Hossain shall be provided to counsel for defendants . . . copies of the written translations of those recordings **which are referred to in any way in the complaint or in any affidavit submitted by the United States in support of its application for arrest or search warrants in this case shall be provided to counsel for Aref and Hossain** . . .

[*Docket 23* (emphasis supplied)]

On the 23rd day of August, 2004, the United States Attorney's Office provided to counsel the following materials:  seventy-five (75) audio-only recorded conversations; fourteen (14) combined audio and video-recorded conversations; sixteen (16) transcripts containing translations of Urdu-language conversations; three FBI 302s recounting April 16, 2004, May 4, 2004 and June 1, 2004 Urdu-language meetings; two FBI 302s recounting post-arrest interviews with both defendants; and

25

telephone records showing calls to international numbers from both defendant Hossain and Aref's telephone numbers. [*Luibrand affidavit at Exhibit "G"*]

On the 7th day of September, 2004, defendant Hossain served upon the government a notice to produce documents and materials, all principally related to Rule 16 material and <u>Brady</u> material. [*Luibrand affidavit at Exhibit "H"*]  On the 8th day of October, 2004, affirmant wrote to David M. Grable, Assistant United States Attorney, seeking compliance with defendant Hossain's September 7, 2004 notice to produce.  [*Luibrand affidavit at Exhibit "I"*]  On the 15th day of October, 2004, Assistant United States Attorney David M. Grable responded, stating that the government was "still reviewing your 100-plus-part September 7, 2004 discovery request, and will follow up next week". [*Luibrand affidavit at Exhibit "J"*]  To date, the government has not formally responded to the September 7, 2004 notice to produce, and has provided piecemeal on irregular occasions materials that are partially responsive to some of the September 7, 2004 items, but without corresponding the government's responses to any item demanded in the September 7, 2004 notice to produce.

Also on the 15th day of October, 2004, the government filed a motion pursuant to Federal Rules of Criminal Procedure Rule 16 and Section 3 of the Confidential Information Procedures Act, 18 U.S.C. Appx. 3 §3 ("CIPA") seeking a conference before the court with respect to confidentiality issues under CIPA.  [*Docket 65*]  On November 17, 2004, a hearing was held in which the court established certain discovery parameters with respect to CIPA allowing the government to evaluate its discovery obligations measured against national security issues.  [*Docket 92*]  The government's internal CIPA process was extended in a court proceeding held January 14, 2005 [*Docket 104*], and three further times thereafter on April 11, 2005, August 9, 2005 and October 19, 2005 [*Docket entries 113, 122 and 142*].

On October 28, 2004, the government provided a copy of documents obtained from defendant Hossain's home and automobile pursuant to execution of its original search warrant. [*Luibrand affidavit at Exhibit "K"*] On May 12, 2005, and after a request therefore from defendant Hossain, the government provided twenty-three (23) CDs containing thirty-one (31) confidential informant recorded conversations in a technical format for defendants to analyze the taped conversations.

On September 29, 2005, a superceding indictment was filed by the government. [*Docket 134*] At the September 30, 2005 arraignment and bail hearing, the government represented that it had provided the defense with all the transcripts it was planning to introduce at trial. [*Docket 139*] The number at the time was sixteen (16) transcripts. On October 14, 2005, a status conference was held before the court, at which time the government provided forty-one (41) additional FBI 302s, twenty-seven (27) additional transcripts (eleven (11) being new versions of original transcripts that had been provided on August 23, 2004) [*Docket 139*], and purported written translations of foreign language materials obtained by the government at execution of its search warrant of defendant Aref. [*Luibrand affidavit at Exhibit "L"*]

On November 4, 2005, affirmant wrote the government pertaining to a number of records not converted by the government to a format useable for translation, as well as the existence of gaps in the tape numbering sequence by the government. [*Luibrand affidavit at Exhibit "M"*] At the time of delivery of the November 4, 2005 letter, and not responsive to defendant Hossain's request, but by coincidence, the government provided six additional CDs said to contain telephone conversations of defendant Hossain recorded during his incarceration at the Rensselaer County Jail before he was released on bail on or about August 24, 2004, extracts from two FBI 302s related to conversations by

the FBI with Mr. Hossain's former wife (he was divorced and remarried), and an enhanced version of the December 10, 2003 audiotape. [*Luibrand affidavit at Exhibit "N"*]

On November 10, 2005, and in partial response to the March 4, 2005 letter from defendant Hossain's counsel, the government provided eight additional videotapes (six of which were surveillance and one of the execution of the search warrant at 278 Central Avenue), four CDs containing photographs (two containing surveillance photographs and two containing photographs taken during the execution of the search warrants at 2 Central Avenue and 44 West Street), and nine additional FBI 302s relating to the execution of the search warrants. [*Luibrand affidavit at Exhibit "O"*] On December 6, 2005, after this motion was substantially completed, the government served several hundred pages of additional FBI 302 materials and tapes. [*Luibrand affidavit at Exhibit "P"*]

From the disclosure by the government, the discovery record to date reveals that there were a total of eighty-one (81) revealed audiotapes and twenty-two (22) videotapes created by the government in connection with its surveillance activities of defendants identified to date by the government. Of the twenty-two (22) videotapes, eight are duplicates of audiotaped conversations and seven have no audio, and therefore there are eighty-eight (88) conversations recorded by the informant or the government, directly, through one of the two (2) recording devices.

Hereafter, defendant Hossain details the legal basis for the court to order the government to produce additional materials in its possession or control.

A.    **The Government is Obligated to Provide All Pre-Arrest Oral Statements Made By the Defendants During Interviews With Government Agents**

Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure reads as follows:

> *Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant,* **before . . . arrest, in response to interrogation by a person the defendant**

> **knew was a government agent** *if the government intends to use the statement at trial.*

USCS Fed Rules Crim Proc R 16 (emphasis supplied).

The government interviewed defendant Hossain at least two times prior to his arrest between September 11, 2001 and August 5, 2004 related to activities of Muslims in the capital region community. Defendant Hossain requested at item 1(1)(a) of his September 7, 2004 notice to produce all such statements, only one of which has been provided by the government either in FBI 302 format or other documents.

Defendant Hossain requests an order directing the government to provide the FBI 302s or otherwise the substance of all oral statements by defendant Hossain made to the government within ten days of an order issued pursuant hereto, or upon the government's failure to so comply, an order precluding the government from utilizing the content of the conversations for any purpose at trial.

## B.    The Government is Obligated to Provide All Written or Tape Recorded Statements Made By the Defendant

Rule 16(a)(1)(B)(i) of the Federal Rules of Criminal Procedure reads as follows:

> *Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following: (i)* **any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control;** *and the attorney for the government knows -- or through due diligence could know -- that the statement exists.*

USCS Fed Rules Crim Proc R 16 (emphasis supplied).

Pursuant to <u>United States v. Crisona</u>, 416 F.2d 107 (2d Cir., 1969) cert denied 397 U.S. 961, 90 S. Ct. 991, 25 L. Ed. 2d 253 (1970), tape recordings between defendant and government witnesses are "statements" under Rule 16, whether occurring prior to arrest or during course of alleged commission

29

of a crime.  (*Also see* <u>United States v. Sherwood</u>, 527 F. Supp. 1001 (W.D.N.Y. 1981), aff'd without opinion at 732 F.2d 142 (2d Cir., 1984).)   The government has provided tape recordings of conversations with defendant Hossain in two increments - the first on August 23, 2004, and the second on November 4, 2005.  Defendant Hossain requests an order directing the government to produce **all** tape recordings made by the government of defendants, and to so affirmatively state on the record of the case that the tapes produced constitute all such recordings, within ten days of an order issued pursuant hereto.

**C.**    **The Government is Obligated to Provide the Transcripts of All Tape Recordings in Its Possession that Will or May Be Used at Trial or Which Are Material to the Preparation of the Defense**

Federal Rules of Criminal Procedure 16(a)(1)(E) reads, in pertinent part, as follows:

> *Documents and Objects.* Upon a defendant's request, the government
> must permit the defendant to inspect and to copy or photograph
> books, papers, documents, data, photographs, tangible objects,
> buildings or places, or copies or portions of any of these items, if the
> item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense.

*See* Fed.R.Crim.P. Rule 16(a)(1)(E).

The government has created with respect to many of the tapes written transcripts of tape recordings made by either the confidential informant or the government.  [*Luibrand affidavit at ¶10*] Seven of the written transcripts are of English language conversations transcribed in English, fifteen (15) are written transcripts of translations of foreign language conversations converted to English text, and eleven (11) are conversations which occurred part in English and part in a foreign language, with the foreign language portions being converted to English text.  [*Luibrand affidavit at ¶10*] Defendant Hossain has requested transcripts of all recordings created by the government of

defendants in his September 7, 2004 notice to produce as both Rule 16(a)(1)(E) and at item 1(b)(i) materials.

These requests are specifically within the areas covered by Fed.R.Crim.P. Rule 16(a)(1)(E), and subject to the original scheduling order of Magistrate Judge David R. Homer, and defendant Hossain specifically requested the following in his September 7, 2004 notice to produce:

> All drafts of all the translations by the translator of any conversations or documents involving defendants  Aref including amendments thereto.  [Item 18]

> All drafts of all the translations by the translator of any conversations or documents involving defendants  Hossain including amendments thereto.  [Item 19]

> The final transcription of all audio-recorded conversations.  [Item 20]

> All written transcripts of any tapes - English or otherwise - obtained by the government.  [Item 81]

In his September 7, 2004 notice to produce, defendant Hossain also requested that the government produce the following 1(b)(i) materials:

> **Any written or recorded statement by  Hossain** and/or co-defendant Aref.  In this regard, and upon information and belief, **numerous audiotapes were made of  Hossain and/or co-defendant Aref.** [Item 1(b)(i)]

[*Luibrand affidavit at Exhibit "H"* (emphasis supplied)]

Forty-nine (49) conversations known to be recorded by the government or through its informant have either not been transcribed by the government or, have been transcribed but have not been provided to the defense by the government.  At the arraignment and detention hearing for the defendants held on September 30, 2005, the government stated:

> *THE COURT: Do you have all the tapes?*

> *MR. LUIBRAND: No -- yeah. Well, I believe we do.*

31

> *THE COURT: Do you have all of the Government's translations?*
>
> *MR. LUIBRAND: No, we don't. I have nine out of seventy something.*
>
> *MR. PERICAK: Judge, those would be the translations we are relying on. If we're not relying on it, we're not gonna go through the burden of doing a translation. I believe he has -- he has all the tapes and* **he has the translations for virtually everything we are gonna rely on***. And if we come up with another minute or two, we will provide the translation, but I think he has that.*

[*Docket 145 at page 46*] However, on October 14, 2005, the government presented twenty-seven (27) additional transcripts. Defendant Hossain's September 7, 2004 notice to produce requests at items numbered 18 through 20 and 81 thereof that the government provide **all** transcripts of conversations, including drafts.

Defendant Hossain requests an order directing the government to produce the forty-nine (49) transcripts not provided to the extent they exist or will be created no later than ten days following issuance of an order pursuant hereto and, upon the failure of the government to produce the transcripts within the ten day period, precluding the government from utilizing transcripts not provided in accordance with said order at trial.

**D.    The Government is Obliged to Produce the FBI 302s With Respect to All Conversations or Recordings Created By the Government Pertaining to the Defendants**

It is the practice and procedure of the FBI to produce FBI 302s with respect to conversations and/or contacts pertinent to an ongoing surveillance, including, specific to this case, any conversations with defendants Aref and Hossain. There are four (4) FBI 302s that were presumably created by the government pertaining to either recorded or monitored conversations of the government with defendants which have not been provided by the defense to the government. The government has not provided FBI 302s for each of the following known conversations between the government's agent and the defendants: August 7, 2003; August 19, 2003; September 30, 2003 and

32

November 20, 2003. These FBI 302 conversations are material and necessary to the defense because each contains summaries of conversations between the government informant and defendants Aref and Hossain.

Defendant Hossain requests that the court issue an order directing the government to provide all the FBI 302s created by it in connection with its conversations and/or observations of the defendants, including the four (4) FBI 302s not produced, no later than ten days from issuance of an order pursuant hereto.

**E.      The Government is Required to Produce the Notebook Found in Iraq Containing Defendant Aref's Name, Specified Materials Related to the Discovery of the Notebook, and to Identify for Deposition Certain Individuals Who Found and Translated the Notebook**

*Factual Background Regarding the Notebook*

In the August 4, 2004 affidavits of FBI Agent Timothy Coll in support of his applications for both search and arrest warrants against defendants Aref and Hossain, Agent Coll describes a "notebook" as having been found at the site of a military attack at Rahwah, Iraq, as follows:

> . . . in June 2003, U.S. military forces destroyed a **terrorist camp** in Northern Iraq. Following the attack, the armed forces found various **pocket litter**, weapons manuals, small arms, RPGs, and shoulder-fired missiles. Included in the **pocket litter** was a **notebook** containing numerous hand-written **Arabic entries** of addresses and telephone numbers . . .

[*Luibrand affidavit at Exhibit "F"* (emphasis supplied)]

Agent Timothy Coll describes the "notebook" content in his August 4, 2004 affidavit as follows:

> Among those entries [in the notebook] was one for "Yasin Arif" which listed an address of "8 Leonard Place, Albany, NY", and a telephone number of "518-427-9892" . . . The notebook entry also referred to AREF as "**Commander ((Yasin)) - New York, United States.**"

[*Luibrand affidavit at Exhibit "F"* (emphasis supplied)]

33

At the first August 10, 2004 detention hearing for the defendants after their arrests and as part of the government's initially successful application to detain defendants without bail until trial, Assistant United States Attorney David Grable described the "notebook" obtained by the government as follows:

> . . . as to defendant Aref in particular, his name in June of 2003, we've been informed by the Department of Defense, was recovered and found in a **notebook following a raid on a terrorist camp** in -- near Rawa (sic), Iraq . . . Included in that notebook were the names of various individuals. The notebook was found along with **other pocket litter**, rocket propelled grenades, from my understanding, shoulder-fired missiles, and small arms and weapons manuals. And in that notebook was included an entry for the name Yassin Aref . . . underneath it a title, **Commander Yassin**, New York, United States.

[*Docket 21 Exhibit "A"* (emphasis supplied)]  At the close of the first detention hearing held on August 10, 2004, both defendants were remanded without bail, based in part, according to Magistrate Judge David R. Homer, on the content and description of the notebook presented by both Assistant U.S. Attorney David Grable and Agent Timothy Coll. [*Docket 14*] Magistrate Judge Homer ordered the government to produce the page of the "notebook" relied upon by the government for its argument. [*Docket 21 Exhibit "A"*]

On August 13, 2004, the United States Attorney produced, via transmittal letter, a redacted version of a purported military-style teletype of unstated origin dated June 12, 2003 (one day after the Rahwah raid) accompanied by a photocopy of a page purportedly from the Rahwah notebook. [*Docket 21 Exhibit "C"*]  The cover letter from the United States Attorney's office to the court, received by defendant Hossain's counsel via facsimile transmission on August 13, 2004, stated:

> *After obtaining a copy of the original [notebook] entry late yesterday[12], FBI translators who reviewed **it concluded that the***

---

[12] What date "yesterday" was is unknown because the government's letter is undated. The faxed version of the letter was received August 13, 2004, implying that "yesterday" was August 12, 2004.

34

> *Kurdish-language word that precedes Aref's name in the second-to-last line of the entry is "brother", not "commander", as indicated in the teletype.*

[*Docket 55 Exhibit "J"* (emphasis supplied)]  The disclosure markedly changed the credibility of the government's claimed content of the notebook, since defendant Aref was no longer claimed to be described as "Commander Yassin" in the notebook, which previous government description implied his status as a U.S. terrorist or foreign military leader when taken in the context of how the government described "where" the notebook was found (i.e., "terrorist camp").

At a hearing then convened by Magistrate Judge David R. Homer and held on August 20, 2004 following the release of this changed translation, Assistant United States Attorney David M. Grable stated that he had, between August 13, 2004 and August 20, 2004, gone to Washington, D.C. and had actually "seen" the notebook, describing it as follows:

> Judge, **we have not been provided with the name of the person on whom it was found.** It is not clear to me with my limited experience in this area, **pocket litter[13] does sound like it comes from people's pockets but it's not clear to me that this was something that necessarily came from someone's pocket.** I've seen the entire original notebook and how big it is in terms of you know, page size, so **it seems like it might not fit in someone's pocket. But in any event, it's not clear to me that it was found in one particular person's pocket.** We don't have the answers to that . . . It's not clear that it was found on a person . . . and my impression is at this point is that we don't have authorization to disclose other information . . . we might not be able to disclose it.  I don't want to talk about what is or is not in the notebook because I am not authorized to do so.

[*Docket 75 at 4:47:29 through 4:49:02* (emphasis supplied)]

---

[13]  "Pocket" litter was how both Agent Coll and Assistant United States Attorney David M. Grable had defined the location of where the notebook was found in their affidavits and argument to Judge Homer, respectively.  [*Docket entries 21 and 75*]

As a result of the changed translation, the defendants were released on bond following the second detention hearing held August 24, 2004.

However, the government continued its claim that the notebook is both relevant and material to the government's case. Following the second detention hearing, United States Attorney Glenn T. Suddaby stated in published media accounts in reference to the notebook:

> "*Regardless of what the translation [of the notebook] is, it doesn't change a thing.*"

[*Luibrand affirmation at Exhibit "Q"*]

> "In our view it does not affect the case at all. Whether the translation is 'commander' or 'brother', it really doesn't **change the significance of where his name and address and contact information was located within the camp in Iraq** . . ."

[*Luibrand affirmation at Exhibit "R"* (emphasis supplied)]

> **"It doesn't change the significance of <u>where</u> this notebook was found."**

[*Luibrand affirmation at Exhibit "B"* (emphasis supplied)]   Thirteen (13) months later, and on September 29, 2005 in furtherance of the government's request of Magistrate Judge Homer to revoke the bail of defendants on the superceding indictment, the government's memorandum of law again emphasized government reliance upon the materiality of the "notebook", stating:

> The foregoing history brings the matter **full circle back to the Rahwah notebook** . . . In June, 2003, Aref's name and telephone number were found in a notebook recovered from a **terrorist camp** at Rahwah.

[*Docket 132 at page 29* (emphasis supplied)]

According to the government's argument - and in the view of the defense for altogether different reasons - the notebook is relevant and material to the case, and a proper translation of its content before trial is critical to the defense. The notebook is relevant and material because the

government has used its contents in its affidavits to obtain arrest and search warrants, and the government has stated its intent to use it at trial [*Luibrand affidavit at Exhibit "F"; Docket 145 at page 16*]. The notebook is also material to the credibility of Agent Timothy Coll. [*Luibrand affidavit at Exhibit F*] Agent Coll asserted in two sworn affidavits dated August 4, 2004, that the notebook was recovered from a "terrorist camp" and that defendant Aref was described as a "Commander" in the notebook as a basis to obtain arrest and search warrants and to detain defendants.  Less than three days later, on August 13, 2004, the government materially changed the description that had been used in Agent Coll's affidavits.

Defendant Hossain requests discovery orders of the materials set out hereinafter with respect to the notebook, each of which was requested in the September 7, 2004 notice to produce served upon the government, including the circumstances surrounding the discovery of the notebook (i.e., "pocket litter"), those individuals who have handled and characterized the notebook for the government, and examination of the notebook itself with the use of translation experts to determine what and whose it is.  Some of the material requested is clear <u>Brady</u> material and other portions are documents or items requiring necessary expert analysis before trial that is "relevant and helpful to the defense . . . or is essential to a fair determination of a cause."  *See* <u>U.S. v. Moussaoui</u>, 382 F.3d 453 (4th Cir., 2004).

### 1.    Circumstances Related to Finding of the "Notebook"

(a)    Where It Was Found

The United States Attorney states that the notebook's materiality to the case is "**where** it was . . . found", with the government calling it a "terrorist camp" at five different filings or proceedings. [*Luibrand affidavit at Exhibits "B", "F", "Q", "R"; docket 48, 58, 74, 75, 119, 145*] On each occasion

where the opportunity was presented - the August 4, 2004 affidavit of Agent Timothy Coll and the August 10, 2004 oral argument of Assistant United States Attorney David M. Grable - the location where the notebook was found is described by the government as a "terrorist camp".[14]  The two affidavits (arrest/search) of the government's principal agent - Timothy Coll - state with certainty and authority that those from whom the notebook was found as a "terrorist camp" and "terrorists".  Using a descriptive phrase like "terrorist camp" and associating the term with Muslim[15] criminal targets accused of money laundering to support terrorism has an overwhelming effect upon a defendant in the eyes of a jury.

A "terrorist camp" expresses a specific knowledge of fact on the part of the person using the term.  But, although using this term, the government's revelation of the facts contradicts what it has previously asserted as fact.  Assistant United States Attorney David M. Grable's August 20, 2004 post-arrest statements to Magistrate Judge David R. Homer reveal that the FBI knew very little of the source of the notebook when the August 4, 2004 specific sworn statements of Agent Coll in affidavits to obtain arrest and search warrants - and presumably grand jury testimony - were made.  Assistant United States Attorney Grable stated on August 20, 2004 that he had no knowledge of the source of the notebook two weeks later.  Associating defendant Aref - and by relationship,  Hossain - two Muslim men, to a "terrorist camp" is material to the case.  There is no definition for the term "terrorist camp" used by Assistant United States Attorney David M. Grable or FBI Agent Timothy

---

[14] Agent Timothy Coll's affidavit:

> . . . as to defendant Aref in particular, his name in June of 2003, we've been informed by the Department of Defense, was recovered and found in a notebook following a raid on **a terrorist camp** in -- near Rawa, Iraq . . .

[*Docket 21 Exhibit "A"* (emphasis supplied)]

[15] Both defendants Aref and Hossain are Muslims.

Coll anywhere in United States law. There are, however, definitions of "terrorism" within the statutes under which defendant Hossain is charged, to wit, 18 U.S.C. §§2332(a) and 2339A, which reads:

> . . . the term "terrorism" means activities that involve violent acts or acts dangerous to human life **that are a violation of the criminal laws of the United States or of any state that appear to be intended to intimidate or coerce a civilian population**; to influence the policy of a government by initimidation or coercion; or to affect the conduct of a government by mass destruction, assassination or kidnapping.

*See* Title 18 U.S.C. §2331 (emphasis supplied). Applying the 18 U.S.C. §2331 definition, the government would have to know when they used the term "terrorists" that the site where the notebook was found was occupied by "terrorists" in order to call it a "terrorist camp".

Someone found the notebook at Rahwah. Whoever it was, that person was likely in the United States military or employed in the United States government. That person is controlled by the United States government since the person found the notebook following a United States military operation and handed it over to the United States. A page of the notebook made its way into the possession of the United States Attorney's Office, and the United States Attorney has examined the entire "notebook".

It is material evidence for the defense to question the person who found the notebook, where and how he found it to determine if it was as presented in Agent Timothy Coll's sworn affidavits, on whose person in Rahwah or in whose vicinity it was found or taken, and if the government has identified by name and affiliation the person who was its owner to determine who that person was.

The defense therefore requests that the court order the government to comply with so much of the September 7, 2004 demand as requested the following:

Identification by name, address and military rank of the individuals who found the "notebook".[16] [Item 48]

All after action reports prepared by any and all individuals who found or supervised those who found the "notebook". [Item 49]

All photographs of the alleged terrorist camp in Northern Iraq before it was purportedly destroyed in June 2003 as alleged at paragraph 16 of the affidavit in support of the application for search warrant. [Item 46]

All photographs of the alleged terrorist camp in Northern Iraq after it was purportedly destroyed in June 2003 as alleged at paragraph 16 of the affidavit in support of the application for search warrant. [Item 47]

Similarly, the defense requests the opportunity to review those photographs from the Rahwah assault aftermath that would show on whose person or in whose vicinity the notebook was found. Assistant United States Attorney David M. Grable stated he is unable to identify even if it was found on **any** person. What person had the notebook - whose original "pocket litter" was it – is material and necessary to the defense to determine if it is someone associated with terrorism who has any connection to defendant Aref.

(b)      The Notebook and Who the Notebook Belongs To

On whose person the "notebook" was found and who was the author and/or owner of the "notebook" are material facts "relevant and helpful to the defense . . . or [e]ssential to a fair determination of a cause". *See* Moussaoui, 416 F.3d at 453. If the notebook was found authored by someone out to harm the United States, it is one document; if it was authored by a civilian as a

_____

[16] The defense does not yet request the court to issue subpoenas to those involved pursuant to Federal Rules of Criminal Procedure Rules 15, 16 and 17. The defendants do reserve the right to do so upon review of the requested documents.

personal phonebook, it is a different document.[17]  The government has provided no information as to the purported author of the notebook that listed Aref or who possessed it when found, stating in August 2004 that it does not appear to have come from anyone's "pocket" as had originally been stated.  Exactly who owned and who had the "notebook" - if that is a different person - is critically material to the validity of the initial warrants, the government's theory for its investigation, and determines whether the sworn statements of Agent Coll are false.

At item 50 of the September 7, 2004 notice to produce, defendant Hossain demanded the following be provided by the government:

> A true and complete copy of the notebook, including the cover page
> and an examination of the original.  [Item 50][18]

The government has used specific portions of the notebook as has served its objectives - to obtain search warrants [*Docket 21 Exhibit "A"*], to obtain arrest warrants [*Docket 21 Exhibit "A"*],

---

[17]   These are examples which - because of the absence of information from the government on the notebook - are hardly exclusive or descriptive but one of an unlistable number of examples that could also include that the notebook was captured by enemy combatants from someone else who had it before it was found by an American ally or soldier.  The point is that the notebook could be anyone's at all, from the nefarious to the righteous.  Given Assistant United States Attorney David M. Grable's statement that it is written in "Kurdish", its author is more likely than not Kurdish, and allied with the United States against Saddam Hussein.  On the day immediately following the Rahwah assault that uncovered the "notebook", then-Ambassador to Croatia, Peter W. Galbraith, testified before the Members of the United States Congress Foreign Relations Committee as follows:

> For the last twelve years, four million in Kurds have governed themselves in
> a de facto independent state **protected by the United States** and Great Britain
> . . . For most Iraqi Kurds, Baghdad is associated with decades of repression
> and, more recently, Saddam Hussein's genocide . . . **The Kurds, after all, were
> America's second major ally in the recent war**, sustaining more casualties
> than the British . . .

[*Luibrand affirmation at Exhibit "S"* (emphasis supplied)]  Therefore, given that the notebook entry related at least to defendant Aref was written in Kurdish, it is likely the author or owner of the notebook was Kurdish and therefore more likely than not was an ally of the United States.

[18]  Each item is a reference to the September 7, 2004 notice to produce of defendant Hossain.

and to argue to detain defendants Hossain and Aref until trial [*Docket 21 Exhibit "A"*]. The government argued in its September 29, 2005 theory of the case the materiality of the notebook. The complete notebook, itself, is "material and necessary" to the defense based upon the limited extent that it has been disclosed, and the defendants seek their own expert translation of its content as well as identification by the expert of the owner. This will allow the defense to rebut the government's case, to prepare applications with respect to the search warrants, and to examine the government's witnesses with respect to credibility.

According to the affidavit of Agent Timothy Coll, the "notebook" has the names of "various individuals" [*Luibrand affidavit at Exhibit "F"*], one entry referring to defendant Aref as "brother", suggesting, without certainty, either a sibling authored the entry or the "brother" reference was used in the Muslim vernacular of referring to another Muslim. However, the identity of the other individuals listed in the notebook is important to knowing the materiality of the notebook owner to any connection to defendant Aref. That is, is the notebook an "Address Book of Terrorists" as originally implied by the government in court on August 8, 2004, or possibly a civilian or relative of defendant Aref who simply had defendant Aref's name in his or her address book. Was the notebook taken by a "bad guy" from a "good guy" before it was found, and found at this site by coincidence. If the name Joe Smith is found in a drug dealer's notebook, does that make Mr. Smith a drug dealer, or was it there because Mr. Smith has an innocuous relationship to the author? Whatever it is, that needs to be determined by examination of the book by an expert translator retained by the defense and familiar with the language of the entries.

There is significant reason to require this production before trial sufficient for translation given the government's history and presented translations of the notebook to date. The government

42

initially stated that the notebook, which was in the government's possession for fourteen (14) months at the time of its initial use in court by the government on August 4, 2004, was written in "Arabic". [*Docket 75*] In his letter three days later, Assistant United States Attorney David M. Grable states the notebook's language is "Kurdish". [*Docket 55 Exhibit "J"*] The government originally reported that the notebook stated that defendant Aref was a "commander", yet three days later conceded that it merely referred to defendant Aref as "brother".

It is highly prejudicial to the defense to await trial to conduct its translation of the notebook, not even knowing what language the notebook is in until trial. Translation will disclose to the defense if this is an innocuous address book, traceable in origin to a certain individual which would make the notebook <u>Brady</u> material. And, since the notebook contains "names of various individuals", the translation and identification of those names discloses to the defense if this is just a plain address book.

The court need not go far to realize the importance of timely, proper and complete translation of the notebook entries. If Magistrate Judge David R. Homer had not ordered the government to release its notebook translation on August 4, 2004, then the "correct" translation would not have been known, there would not have been a second detention hearing, and defendant Hossain would have remained in jail, without bail, for the predictable eighteen (18) months before trial. The defense needs their own translators to challenge the search warrants which used the notebook entries as a basis, and for trial, neither of which can be accomplished by handing the notebook or extracts thereof over at trial. Examination of the notebook by defendants' attorneys with a translator would allow counsel to challenge probable cause for the warrants which relied so heavily on the notebook, and impeach the sworn affidavit of Agent Timothy Coll [*Docket 1*].

43

(c)    The Notebook Translators Both Before and After the Inaccurate Translation Presented By the Government Must Be Identified and Made Available to the Defense

The government initially translated the notebook and Agent Timothy Coll claimed it identified defendant Aref as a "commander". [*Docket 55 Exhibit "J"; Docket 21 Exhibit "A"*] The description "Commander" was expressed as **fact** by FBI Agent Coll in his August 4, 2004 sworn affidavits as well as by the United States Attorney in his August 10, 2004 courtroom presentation. The inaccurate statement means that the proper translation of the notebook contents will impeach the affidavits of Agent Timothy Coll, an acknowledged material witness. *See* Strickler v. Greene, 527 U.S. 263, 280 (U.S. 1999). The Stickler court found the following:

> In Brady this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976), and **that the duty encompasses impeachment evidence as well as exculpatory evidence**, United States v. Bagley, 473 U.S. 667, 676, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985).

Strickler, 527 U.S. at 280 (emphasis supplied).

The testimony of Agent Timothy Coll is based upon what he knew about the notebook text and when he knew it. The defense requests an order directing that the government identify the translator who originally translated the notebook entry and the second one who allegedly corrected the translation, that both be made available to the defense for deposition, as well as when this was done, both requested in defendant's September 7, 2004 notice to produce as follows:

> The name and background of the individual who conducted the official translation of the notebook by the government prior to the August 10, 2004 detention hearing of defendants  Hossain and co-defendant Aref. [Item 51]

44

> The name and background of the individual who conducted the official translation of the notebook by the government subsequent to the August 10, 2004 detention hearing of defendants Hossain and co-defendant Aref. [Item 52]

This disclosure will reveal whether the original affidavits were untrue.

## F.    The Complete Criminal History of Defendants Aref and Hossain Must Be Produced, Including United States and Overseas History

Federal Rules of Criminal Procedure Rule 16(a)(1)(D) requires the government to produce the following:

> Upon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows - or through due diligence could know - that the record exists.

Fed.R.Crim.P. Rule 16(a)(1)(D).

Defendant Hossain's September 7, 2003 notice to produce specifically requests the government produce the following:

> A copy of Hossain and/or co-defendant Aref's prior criminal record that is within the government's possession, custody, or control. This record must include any and all arrests in the United States or abroad. [Item 1(d)]

[*Luibrand affidavit at Exhibit "H"*]

On October 22, 2004, Assistant United States Attorney David M. Grable wrote defendant Hossain's counsel provided a copy of defendant Hossain's United States criminal history. [*Luibrand affidavit at Exhibit "T"*] The written criminal history (1) is limited to the United States, and (2) has only the following entry:

> "**AG DIRECTIVE 04/11/2002** KNOWN OR SUSPECTED TERRORISTS - NEW YORK SEVERITY UNKNOWN"

45

On October 27, 2004, defendant Hossain's counsel wrote to Assistant United States Attorney David M. Grable requesting an explanation for the above-quoted information:

> Demand is hereby made for production of the "AG Directive 4/11/2002" set forth as part of Mr. Hossain's criminal history.

[*Luibrand affidavit at Exhibit "U"*]

To date, the government has refused to provide an explanation for the government's coded language on the defendant's criminal history document. The refusal of the government to decode the purported criminal history document deprives defendant of statutory material required by Fed.R.Crim.P. Rule 16(a)(1)(d).

In addition, defendant Hossain's notice to produce requested the following:

> A copy of  Hossain and/or co-defendant Aref's prior criminal record that is within the government's possession, custody, or control. **This record must include any and all arrests in the United States or abroad.** [Item 1(d) (emphasis supplied)]

[*Luibrand affidavit at Exhibit "H"*]

The government has not provided disclosure on any arrests abroad or a statement that none exist which would be part of its discovery obligation. *See* <u>Giglio v. United States</u>, 405 U.S. 150, 154, 92 S.Ct. 763; 31 L.Ed.2d 104 (1972).  Defendant Hossain requests an order directing the government to comply with the demand or state that no such arrests exist within ten (10) days of an order issued pursuant hereto.

## G.    <u>Brady</u> Impeachment Materials

Any material that would tend to impeach the credibility of a government witness is <u>Brady</u> material subject to mandatory disclosure by the government. *See* <u>Giglio v. United States</u>, 405 U.S. 150, 154, 92 S.Ct. 763; 31 L.Ed.2d 104 (1972).  The September 7, 2004 notice to produce by defendant

Hossain requested the following specific materials that are required to be disclosed under <u>Brady v.</u>

<u>Maryland</u>:

> The criminal history of the confidential informant, including arrests in the United States and overseas. [Item 10]
>
> The date of each arrest of the confidential informant. [Item 21]
>
> All evidence or information in possession of the government indicating that the confidential informant has made threats to any person. [Item 75]
>
> All evidence or information in the government's possession indicating in any fashion that the government's informant has previously provided false testimony or statements at any time in any setting and in any proceedings. [Item 77]
>
> A description of all other names or aliases utilized by the informant. [Item 78]
>
> Any evidence or information that the government has that the informant has caused another's death or serious injury including acts alleged that he committed overseas. [Item 87]

The government's confidential informant, who is the source of twenty-seven (27) paragraphs of the affidavit of Agent Timothy Coll supporting the search and arrest warrants, and who is a participant in all eighty-eight (88) known to be recorded and other unrecorded conversations with defendants, is a material witness. His credibility is critical, and prior inconsistent or false testimony by the informant is <u>Brady</u> material subject to disclosure. *See* <u>United States v. Bagley</u>, 473 U.S. 667, 676, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985).

**H.     Preferential Treatment or Favors Accorded By the Government to the Informant is <u>Brady</u> Material**

Defendant Hossain requests an order directing the government to disclose the following material with respect to the confidential informant:  (1) his plea deal with the government; (2) other offenses of which he was charged or suspected; (3) inconsistent statements made by the informant for

the government; (4) aliases or other names used by the informant; (5) the payment method and amount, if any, between the government and the informant; and (6) the docket numbers and case names in which the informant has been involved.

In United States v. Sanchez, 68 Fed. Appx. 283 (3d Cir. 2003), the court held the following:

> In *Roviaro v. United States*, 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957), the Supreme Court outlined a balancing test in cases involving confidential informants. As the *Roviaro* court explained:
>
> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*See* Sanchez, 68 Fed. Appx. at 287.

In this case, the informant's identity has been reported in area newspapers, his name is obviously known to all parties, and he lives openly and visibly in the hamlet of Loudonville, New York. He is, without question, the material witness, and the information sought is all Brady material.

In the court's balancing test, there is no basis for the balancing to concluding favorable to the government withholding the requested materials and information. *See* Monroe v. Angelone, 323 F.3d 286 (4th Cir., 2003); Rovario v. United States: "Where the disclosure of an informant's identity is relevant to the defense of an accused, or is essential to a fair determination of a cause, the privilege (of nondisclosure) must give way". Rovario, 353 U.S. at 60-61. In addition, defendant Hossain requests an order compelling the government to provide information and materials on any and all favors or preferential treatment provided by the government to the confidential informant. In particular, defendant's counsel is aware that during a period in 2003 through 2005 in which the informant was in bankruptcy, he may have received government resources, and those resources were not disclosed

to the bankruptcy trustee in sworn filings.  The favors that may have extended to funds or in-kind relocation to another geographic area, and assistance in both expenses coming and going from the capital region.  Such benefits provided to a witness are Brady materials subject to mandatory disclosure by the government.  *See* Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763; 31 L.Ed.2d 104 (1972).

**I.      Materials or Information in the Government's Possession Regarding Defendant Hossain's Lack of Predisposition to Commit to Offenses Charged**

At the first detention hearing held on August 10, 2004 before United States Magistrate Judge David R. Homer, the court, upon hearing the arguments of the United States Attorney, made the following observation:

> *There is no question, as defense counsel state, that the offense in this case, it appears,* **was suggested by the government informant and not by either defendant***.*

[*Docket 58 at page 64* (emphasis supplied)]

This observation by Magistrate Judge David R. Homer reinforces the possibility that entrapment is at issue in the case making evidence of prior predisposition - or lack thereof - of defendant Hossain material.  *See* Jacobson v. United States, 503 U.S. 540, 548-549 (U.S. 1992), 118 L.Ed.2d 174, 112 S.Ct. 1535 (1992).  That possibility is enhanced with the government's assertion in its August 2005 *ex parte* motion to the court:

> *Given the low threshold established by the Second Circuit, the government intends to propose jury instructions which* **concede inducement** *and move the jury directly to predisposition.*

[*Docket 119 at page 26*] Evidence in the possession of the government of defendant Hossain's lack of predisposition to commit the offenses charged is exculpatory Brady material.  A number of the

requests in defendant's September 7, 2004 notice for discovery and inspection relate specifically to

production of exculpatory materials related to the predisposition elements:

> The notes and summaries of any conversations by the FBI or any member of the Albany Anti-Terrorism Task Force with Aref. [Item 27]
>
> The notes and summaries of any conversation by the FBI or any member of the Albany Anti-Terrorism Task Force with Hossain. [Item 28]
>
> All government typed or written summaries of all conversations involving Aref. [Item 29]
>
> All government typed or written summaries of all conversations involving Hossain. [Item 30]
>
> All written statements or summary of statements obtained by the government from members of the Muslim community from September 11, 2001 to August 4, 2004 pertaining to Aref. [Item 79]
>
> All written statements or summary of statements obtained by the government from members of the Muslim community from September 11, 2001 to August 4, 2004 pertaining to Hossain. [Item 80]
>
> All Brady material pertaining to the good character of defendant Hossain including but not limited to summaries of any conversations with any third parties in the Muslim community or otherwise. [Item 82]

[*Luibrand affirmation at Exhibit "H"*]

In addition to the list aforesaid, the government has been conducting an at least sixteen (16)

month search internationally related to defendants Aref and Hossain [*docket entries 56, 94, 101,*

*114*], and that such search by the government presumably started in some form in the months

preceding the August 5, 2004 arrest of defendants Aref and Hossain.

To the extent that the government's searches produce no information on pre-disposition of

defendant Hossain to commit the crimes charged, or the extent that lack of predisposition is found on

each track of factual search done (i.e., State Department, United States military, immigration, INTERPOL, etc.)[19], each such factual finding would be exculpatory <u>Brady</u> material to which defendant Hossain is entitled to be provided.

J.    <u>Brady</u> and <u>Moussaoui</u> Exculpatory Telephone Records

At the second detention hearing held on August 24, 2004, the government argued that a listing of telephone calls it has tracked from defendant Hossain's telephone numbers were probative of the government's case against them:

> We had the opportunity to review telephone records from defendant Hossain from January of 2004 through the end of July 2004 . . . those records showed a total of over one hundred international calls and those calls were to the following countries:  Bangladesh, Saudi Arabia, Vietnam, Angola, Canada, Greece and the United Kingdom.  And as for as our research indicates, there's no extradition treaty that the United States has with the first four countries.  We think it bears on the issue of flight risk, **we think that it shows ties to other countries**. . . . But we submit that's an important factor on flight risk.

[*Docket 48 at pages 40-41* (emphasis supplied)]

The government, which has unique access to international telephone numbers and exchanges, would have a <u>Brady</u> and <u>Maussauoi</u> obligation to disclose the objects of the telephone calls.  The object of the conversation would be material to the defense, and to the extent the person is unrelated to predisposition for the crimes alleged, it is also discoverable <u>Brady</u> materials.  Defendant Hossain requests that the court order the government to provide information on the object of the international calls including the names, addresses and telephone numbers of the person called from a telephone number of defendant Hossain within ten days of an order issued pursuant hereto.

---

[19] The government has not had to disclose anything about the nature of its searches, but has submitted periodic ex parte reports with respect to them to the court.  These reports were heavily redacted and the defense does not know the content.

**K.    All GPS Tracking Information Regarding Defendants  Aref and  Hossain**

Defendant Hossain requests an order compelling the government to produce all GPS tracking information pertaining to defendant Hossain prior to August 2004 (arrest date), and for the government to describe and disclose whether it obtained a search warrant with respect thereto.  The GPS will establish defendant Hossain's non-criminal behavior as evidence of lack of predisposition.

**L.    Defendant Hossain is Entitled to Disclosure of the Government's Expert Witnesses**

Defendant Hossain requested at items 36, 37 and 38 of his notice to produce the following:

> Identification of all expert witnesses, including translators, linguists, religious experts, document experts, or any other expert utilized by the government in its investigations of defendants.
>
> All cases on which all such experts have consulted or testified.
>
> The background of all experts who have consulted with the government on this case.

Rule16(a)(1)(g) of the Federal Rules of Civil Procedure reads as follows:

> *Expert Witnesses.  At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial.*

Defendant Hossain requests an order directing the government to disclose its expert witnesses including translators, transcribers, linguists, religious, Middle East, or other who may testify at trial including their name, address, education, cases in which each has testified or consulted, and that each be directed to produce prior to trial all notes created in reference to preparation for documents the experts created or in anticipation of trial, and a written summary of their testimony.

**M.    The Government Must Be Ordered to Give Notice of Intent to Use Hearsay Statements Not Specifically Covered By the Exceptions to the Hearsay Rule**

Defendant Hossain requests an order pursuant to Federal Rules of Evidence 803 and 804 requiring the government to give notice of intent to use hearsay statements not specifically covered by the exceptions to the hearsay rule. This request stems from defendant Hossain's right and desire not to receive a "trial by ambush". Specifically, this request is tailored to including, but not limited to, any hearsay evidence that may be provided by confidential informants as a result of their status, upon information and belief, as unindicted co-conspirators.

**N.    The Government Must Disclose Any <u>Giglio</u> Material**

Defendant Hossain requests an order compelling the government to disclose to defendant Hossain the details of the existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducments made to prospective witnesses within the scope of <u>United States v. Giglio</u>, 405 U.S. 150 (1972).

**O.    The Government Must Disclose Any Testifying Informant's Convictions**

Defendant Hossain requests an order compelling the government to disclose to defendant Hossain a record of prior convictions of any alleged informant who will testify for the government at trial.

**P.    Defendant Hossain Requests a Suppresion Hearing for Post-Arrest Statements Made by Defendant Hossain**

Defendant Hossain requests an order setting a suppression hearing with respect to any statements made by defendant Hossain following his arrest on August 4, 2004.

## CONCLUSION

Defendant Hossain respectfully requests that the relief requested in said defendant's omnibus

motion be granted, together with such other and further relief that this Court deems just, proper and

equitable.

Dated:  December 9, 2005                    Yours, etc.,

                                            TOBIN and DEMPF, LLP


                                            Kevin A. Luibrand, Esq.
                                            Federal Bar Roll No. 102083
                                            Attorneys for Defendant Mohammed Hossain
                                            Office and P.O. Address:
                                            33 Elk Street
                                            Albany, New York  12207
                                            Telephone:  (518)463-1177
                                            Facsimile:  (518)463-7489
                                            E-mail:  kluibrand@tobindempf.com