UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA,**

        Plaintiff,                        **AFFIDAVIT**

        **v.**                             **04-CR-402 TJM**

**YASSIN AREF and**
**MOHAMMED HUSSAIN,**

        Defendants.

---

1.      Terence L. Kindlon, an attorney duly admitted to practice in the Northern District of New York, being duly sworn, states:

2.      I am the attorney for Yassin Aref and I make this affirmation, on his behalf, in support of the motion for pretrial relief herein.

3.      I am familiar with the facts and circumstances of this case. The sources of my information include conferences with my client, investigation, research and discovery material.

4.      I hereby join in the motions made by the attorney for the co-defendant in this case, and incorporate the requests for relief made therein, to the extent that such requests are consistent with this motion.

## I.    ENTRAPMENT

5.      In the government's August 9, 2005 motion for a protective order, it was stated, at page 39, that Yassin Aref may not be entitled to an entrapment instruction because he was recruited by co-defendant Mohammed Hussain.

6.      First, the government stated, on page 2 of the August 9, 2005 motion, that Mr. Aref was their target all along, and that their goal was to get Mr. Hussain to introduce the

informant to Mr. Aref. Along those lines, upon information and belief, the criteria given by the informant for the witness (that he could not be Pakistani, Bangldeshi or Indian, etc) were intended to elicit the name of Yassin Aref.

7.    Moreover, regardless of who brought Mr. Aref in as a witness to the financial transactions between the informant and Mr. Hussain, it is clear from the tape transcripts provided by the government that Mr. Aref was then directly induced several times by the informant (or at least the informant attempted to do so as it is not clear that Mr. Aref understood him).

8.    For example, in the transcript of both the 12/10/03 and 1/2/04 alleged conversations, the informant discussed breaking American laws but following the laws of Allah, and asked Aref his opinion of this.

9.    In the transcript of another 1/2/04 alleged conversation the informant tries to get Mr. Aref more involved by complaining that he doesn't want to have to call Mr. Hussain for payments, and Mr. Aref says not to worry, to call him and he will make sure Mr. Hussain makes his loan payments.

10.    In the transcript of the 6/10/04 alleged conversation, at page 27, the informant says, "If I could give Musharref [Hussain] fifty thousand dollars, I can certainly give you fifty thousand dollars, too, you know? Because my business comes from selling ammunitions, you know?...."

11.    In the case at bar there is clearly evidence that, not only did the government target Aref all along, but that the informant induced him to commit crimes on several occasions.

12.    Therefore, Yassin Aref is entitled to an instruction on entrapment, and the government has the burden to prove predisposition beyond a reasonable doubt.

**Entrapment as a Matter of Law**

13.     In the August 9, 2005 motion for a protective order, at page 30, the government stated that evidence of Mr. Aref's predisposition would include "accepting, without hesitation, the proposal to launder what were represented to be proceeds of a SAM sale to terrorists in New York City ... Aref's speeches, sermons and affiliations, ...cautioning the CW about law enforcement, Aref's ...expression of a desire to take on the CW as a silent partner in the purchase of Hussain's pizzeria, Aref's presenting to the CW a 'different opportunity' to negotiate the $9,200 check, Aref's misreporting of his income and resources to obtain public benefits..."

14.     Upon information and belief none of the above material is probative of predisposition to commit the alleged offenses regarding money laundering or providing material support to terrorists.

15.     First, Mr. Aref did not "accept a proposal to launder money;" he was brought in only as a witness to the transactions, as required under Islamic law.

16.     Secondly, his "speeches, sermons and affiliations" are far too general and removed in time from the allegations for which predisposition is relevant, and thus, while they may show religious and/or political *beliefs*, do not show any predisposition to any *acts* in support of money laundering or terrorism.

17.     Similarly, cautioning the CW about law enforcement does not show any predisposition to money laundering or terrorism, but, rather, reflects the post 9-11 climate in which Muslims are seen as suspect and must carefully watch what they say, for any general statements perceived as being "anti-American" can cause them to be detained, interrogated, etc.

–3–

18. Asking the CW to be a silent partner in the pizza business has absolutely no connection to any predisposition, but is clearly only an attempt to raise sufficient funds to purchase the business, which is just as clearly not connected to any of the illegality alleged in the indictment.

19. Not only does the discussion of the $9,200 check not show any predisposition, to the contrary, it shows lack thereof, as when the CW said "if this is 'in the name of Allah' I won't charge you the transfer cost," Mr. Aref dropped the whole idea.

20. Finally, any misrepresenting of income is completely unrelated to a predisposition to commit money laundering or promote terrorism - as pointed out in Mr. Hussain's motion, that would mean that any medicaid fraud or tax evasion charge could be said to be evidence of a predisposition toward terrorism, which is completely absurd.

21. In sum, none of the evidence mentioned by the government supports predisposition, and the Court should find that Yassin Aref was entrapped as a matter of law, and dismiss the indictment.

**Evidence**

22. Even if the Court does not find that Mr. Aref was entrapped as a matter of law, much of the evidence the government seeks to admit would not be admissible to show predisposition in any event.

23. Based on the discussion above regarding the proposed "predisposition evidence," upon information and belief, none of the evidence mentioned by the government is admissible to support an inference that Mr. Aref's purpose included the offenses charged. Yassin Aref requests permission to supplement this motion if necessary when the government submits more

particularized information regarding the alleged "predisposition evidence."

## II    SEVERANCE

### A.    Severance of Counts 28, 29 and 30 from the Remainder of the Indictment

24.    Counts 1-27 of the superseding indictment include both defendants, and those counts all charge offenses relating to the sting operation where the informant induced (or attempted to induce, as it appears that he was not always understood) the defendants to commit certain offenses.

25.    In contrast, Counts 28-30 involve only Yassin Aref, and involve allegations completely unrelated to the sting operation.

26.    Count 28 alleges that on February 13, 2002, Yassin Aref did not mention his past alleged membership in the Islamic Movement of Kurdistan, a Kurdish nationalist organization (which is not, nor has it ever been, designated a "foreign terrorist organization" by the United States) in an immigration form in which he was asked to list his past and present membership in or affiliation with "every political organization, association, fund, foundation, party, club, society or similar group in the United States or in any other places since your 16[th] birthday[1]."

27.    Similarly, Count 29 alleges that on August 5, 2004 (significantly, hours after his arrest in this case) Mr. Aref failed to tell the FBI of his past membership in the Islamic Movement in Kurdistan.

28.    Finally, Count 30 alleges that, also on August 5, 2004, Mr. Aref did not admit to having met Mullah Krekar many years earlier.

---

[1]It is submitted that for many if not most people, simply remembering such a list of organizations, clubs, etc, is an impossible task.

29.     It appears that the only conceivable basis for allowing Counts 28-30 to remain in the indictment is that the government will attempt to use evidence of past membership in the Islamic Movement in Kurdistan, and evidence that Mr. Aref had previously met Mullah Krekar, as evidence that he was predisposed to commit the offenses alleged in Counts 1-27.

30.     Any evidence of Mr. Aref having met Mullah Krekar (and having denied it), no matter how remote in time, place and significance from the allegations in Counts 1-27, is highly prejudicial under the circumstances.

31.     Whether or not such evidence may be admitted to show predisposition is yet to be determined. However, this Court should sever Count 30 (and Counts 28 and 29, which similarly relate to alleged past membership in the Islamic Movement in Kurdistan) from the rest of the indictment at this time.

**B.     Severance of the Two Co-defendants**

32.     Yassin Aref also moves for severance of his case from that of Mohammed Hussain under Rule 8(b) and Rule 14 of the Federal Rules of Criminal Procedure.

33.     Mohammed Hussain is alleged to have actively participated in and profited from what he allegedly believed to be a money laundering scheme which he allegedly also believed was intended to "promote terrorism" under relevant legal definitions.

34.     Yassin Aref, on the other hand, did not receive any money, did not profit in any way, and did not believe he was laundering any money - he was simply brought in as a witness to the transactions between the other two people as required under Islamic law.

35.     Moreover, the bulk of the transcripts of the alleged recorded conversations provided by the government involve discussions between the informant and Mohammed

Hussain.

36.     Most of the time Yassin Aref was not even present and, additionally, those conversations are almost all in Urdu, a language he does not speak.

37.     In addition, even when the conversations involve Mr. Aref, and are in English, it is clear that his English is very limited.

38.     Included in the transcripts are many alleged statements by Mr. Hussain which would cause spillover prejudice to Mr. Aref were they included in a joint trial. (See, for example, the comments allegedly made by Mr. Hussain on 12/15/03, 2/3/04, 2/13/04, 2/25/04) Finally, some of the transcripts, as well as the government's August 9, 2005 motion for a protective order, allege that Mohammed Hussain claimed to have been involved with a New York City affiliate of Jamaat Islami, a Pakistani Islamic fundamentalist organization.

39.     For all of the above reasons, Yassin Aref requests severance under Rules 8(b) and 14.

## III     MOTION FOR DISCOVERY AND INSPECTION

40.     First, Yassin Aref hereby incorporates the discovery requests made by co-defendant Mohammed Hussain.

**Statements Made During Questioning by One Known By Aref to be an Agent**

41.     The government has made reference to several alleged written and/or oral statements by Yassin Aref which were allegedly made during his interrogation by government agents on various occasions.

42.     Yassin Aref requests copies of the substance of all the following alleged statements, including all written reports, and including all agents' notes:

43.     Any and all statements allegedly made on October 4, 2001, when Mr. Aref was interviewed by the FBI and the New York State Police.

44.     Any and all statements allegedly made on February 13, 2002 (which are the basis for Count 28 of the indictment).

45.     Any and all statements allegedly made on December 30, 2002, when Mr. Aref was again interviewed by the FBI.

46.     Any and all statements made on April 4, 2003, when Mr. Aref was interviewed at length by FBI agents.

47.     Any and all post-arrest statements allegedly made on August 5, 2004, when Mr. Aref was extensively interrogated by various government agents.

**Recordings**

48.     As pointed out in co-defendant Hussain's omnibus motion, the government must also provide all video and audio recordings of the defendants, including all such recordings of conversations with the informant.

49.     While much of said material has been provided, it is not clear at this time that all the required material has been provided, and Yassin Aref requests that any such material not yet provided by turned over immediately.

**CIPA**

50.     The government has stated that there is classified information relevant to this case, and has provided the Court with certain material which the defendants and their counsel have not been allowed to see, in spite of the fact that both defense counsel have now obtained security clearances.

51.    For example, the government's August 9, 2005 motion for a protective order was very heavily redacted, and much of its contents were kept from the defense.

52.    The Court has not yet ruled on a defense request to see the unredacted government motion.

**Access of Defense Counsel**

53.    As stated in Yassin Aref's August 29, 2005 Affirmation in opposition to a protective order, the purpose of the defense obtaining the security clearances was so that the defense attorneys could examine materials for their clients so as to adequately prepare a defense.

54.    The government should be directed to disclose its unredacted application to the defense, redacting from public disclosure those items designated "classified," and then allow the defense to view the application within the secured methods set up in this case (i.e. secure room, no notes to leave, no release to the public, etc.).

55.    The defense would then be in position to know the type and categories of materials the government is now asking the court to protect from disclosure, and be in a position to present arguments to the court in response to the application for disclosure of those materials.

56.    The defense is unable to properly or completely articulate defenses or possible defenses until it views materials which the government is obliged to provide to the defense.

57.    Therefore, Yassin Aref reiterates his prior motion that defense counsel be given access to the unredacted government motion, and to any and all other classified material relevant to the case.

**Violation of Defendant's Fifth and Sixth Amendment Rights**

58.    Any exercise of CIPA (the Classified Information Procedures Act) which deprives a defendant of fundamental constitutional rights is not permitted - CIPA may not place the defendant in any worse position that he would have been in without it.

59.    This Court should take all necessary measures to insure that in protecting any legitimate national security interests, the defendants must not be denied their personal right to confront evidence against them.

**Rahwah Notebook**

60.    Finally, Yassin Aref hereby incorporates all the requests made in co-defendant Mohammed Hussain's omnibus motions with respect to the "Rahwah notebook" allegedly discovered at some sort of camp in 2003 in northern Iraq. See Mr. Hussain's memorandum of law, at pages 33-45.

## IV.    STATEMENTS

61.    Yassin Aref moves to suppress any and all statements allegedly made by him after his arrest in this case.

62.    It is submitted that Yassin Aref was not properly accorded his constitutional warnings under Miranda v. Arizona in this case.

63.    While the prosecution claims that *Miranda* warnings were given to him, and that, on one occasion, the warnings were translated into Kurdish, his native language, it is submitted that Mr. Aref did not understand the agent (on the occasion when there was no translator) and did not adequately understand the translator.

64.    Yassin Aref was not made fully aware of his right to remain silent, and did not

voluntarily relinquish said right.

65.    It is submitted that Mr. Aref, who had no criminal history, was subjected to intensive, pressurized and threatening interrogation by several different government agents while in custody.

66.    Therefore the Court should suppress any and all post-arrest statements obtained from Mr. Aref or, in the alternative, hold a hearing to examine the circumstances under which said statements were obtained.

## V.    SUPPRESSION OF EVIDENCE SEIZED

67.    There were several search warrants obtained in this case, and the two which are challenged herein are the warrants for the search of Yassin Aref's residence at 44 West Street in Albany, and the warrant to search the Masjid As Salam Mosque at 276-287 Central Avenue in Albany. The warrants were executed on August 5, 2005, and many items were seized.

68.    In the application for the warrant, FBI Special Agent Timothy Coll discussed much of the evidence subsequently provided to the defense - i.e. the recorded conversations involving the informant.

69.    However, on page 5 of the warrant applications mention is made of the notebook allegedly found in norther Iraq in 2003.

70.    The application states, "The notebook entry also referred to AREF as 'Commander ((Yassin)) - New York, United States'"

71.    As is well-known, the translation of said notebook was falsely made, and the word claimed to mean "Commander" actually means "brother."

72.    It is submitted that Special Agent Coll either knew that said information was

false, or acted in reckless disregard for the truth in relying on said information, and as a result the Court should suppress the evidence seized.

73.    In addition, upon information and belief,  many of the statements attributed to both Mr. Aref and Mr. Hussain in the warrant application were either not accurately transcribed, were not accurately translated, or were taken out of context.

74.    Upon information and belief, Special Agent Coll either knew that some of said information was inaccurate, or acted in reckless disregard for the truth in relying on said information.

75.    Because much of the relevant information in the warrant application was not accurate, and because said inaccurate information was known to be inaccurate, or was obtained in reckless disregard for the truth, there was no valid probable cause for the issuance of the warrants, and all the evidence seized should be suppressed.

76.    In the alternative, if the Court does not suppress the evidence seized, Yassin Aref requests an evidentiary hearing.

77.    In addition, upon information and belief, any alleged consents to search claimed to have been executed by Yassin Aref were invalid, as no voluntary consent was provided - any consents were the product of extensive psychological coercion of Mr. Aref and his family.

## VI.  PRODUCTION OF ALL BRADY MATERIAL

78.    Yassin Aref requests that the government produce any and all information and evidence that is in any way whatsoever arguably exculpatory in nature, as to the issues of guilt or innocence, for purposes of impeachment of any witnesses at the trial or at any hearing, or in any other possible way.

79.    Additionally, Yassin Aref hereby incorporates the requests for *Brady* and *Giglio* material made in co-defendant Mohammed Hussain's omnibus motion.

## VII.    PRIOR CONVICTIONS/ BAD ACTS

80.    In the interests of justice and judicial economy, such issues should be determined prior to trial.  Yassin Aref therefore requests that the government specify as soon as possible what particularized evidence of prior "bad acts" it intends to introduce so that it may be determined whether or not such evidence is admissible.

81.    While certain evidence has been mentioned in the government's motion for a protective order, the government must make a much more detailed showing of just what it wishes to introduce, and the claimed basis for doing so.

## VIII.    PRESERVATION OF NOTES

82.    Yassin Aref requests that the court order the prosecutor to instruct the detectives and agents on this case to preserve their original notes.

## X.  LEAVE TO MAKE ADDITIONAL MOTIONS

83.    Yassin Aref has respectfully requested the right to make further motions as required as a result of the receipt of additional information in this case should the government see fit to provide defense counsel with the discovery that it is obligated to provide.  Additionally, Yassin Aref reserves the right to file new motions in support of issues raised in this motion and in response to this motion.

Dated: December 14, 2004.

S/Terence L. Kindlon
Bar Roll No. 103142

-13-

*Attorney for Yassin Aref*
74 Chapel Street
Albany, New York  12207
Telephone: (518) 434-1493
Fax: (518) 432-7806
E-mail: TKindlon@aol.com

************************************

**CERTIFICATE OF SERVICE**

Amy Hiller hereby certifies that on December 14, 2004 she personally served the above Notice of Motion, Affidavit, Memorandum of Law and Proposed Order to Yassin Aref via the United States Post Office, and to each of the other individuals named in the Notice of Motion via electronic filing.

_____
Amy Hiller