UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

**UNITED STATES OF AMERICA,**

          Plaintiff,                              **MEMORANDUM OF LAW**

        **v.**                                    **04-CR-402 TJM**

**YASSIN AREF and
MOHAMMED HUSSAIN,**

          Defendants.

_____

      Yassin Aref, through his attorney, Terence L. Kindlon, respectfully submits:

## I.     ENTRAPMENT

      In the government's August 9, 2005 motion for a protective order, it was stated, at page 39, that Yassin Aref may not be entitled to an entrapment instruction because he was recruited by co-defendant Mohammed Hussain. The government cited the case of *United States v. Toner[1]*, 728 F.2d 115 (2nd Cir. 1984) in support of this theory. That case, where Mr Toner was initially not known to the informant, and was then brought by his co-defendant into a plan to buy machine guns from the informant, and *where he was not directly induced by the informant*, is not applicable here for several reasons. First, the government stated, on page 2 of the August 9, 2005

---

[1] *Toner* is interesting for comparison purposes because in that case the defendants were alleged to have tried to buy 20 M-16's in order to transport them to Northern Ireland to be used by the IRA in acts of "terrorism." The defendants were convicted of various firearm offenses and Toner was sentenced to 18 months, while his co-defendant, Murphy, was sentenced to five years. Those defendants clearly had real plans to "promote terrorism" and they believed the informant was a means for them to do so. Here, in contrast, the only real plan was the government's plan to entrap the defendants.

motion, that Mr. Aref was their target all along, and that their goal was to get Mr. Hussain to introduce the informant to Mr. Aref. Along those lines, it is submitted that the criteria given by the informant for the witness (that he could not be Pakistani, Bangldeshi or Indian, etc) was intended to elicit the name of Yassin Aref.

Moreover, regardless of who brought Mr. Aref in as a witness to the financial transactions between the informant and Mr. Hussain, it is clear from the tape transcripts provided by the government that Mr. Aref was then directly induced several times by the informant (or at least the informant attempted to do so as it is not clear that Mr. Aref understood him). For example, in the transcript of both the 12/10/03 and 1/2/04 alleged conversations, the informant discussed breaking American laws but following the laws of Allah, and asked Aref his opinion of this. In the transcript of another 1/2/04 alleged conversation the informant tries to get Mr. Aref more involved by complaining that he doesn't want to have to call Mr. Hussain for payments, and Mr. Aref says not to worry, to call him and he will make sure Mr. Hussain makes his loan payments. In the transcript of the 6/10/04 alleged conversation, at page 27, the informant says, "If I could give Musharref [Hussain] fifty thousand dollars, I can certainly give you fifty thousand dollars, too, you know? Because my business comes from selling ammunitions, you know?...."

In *United States v. Greenridge*, 1996 US App LEXIS 2496 (2nd Cir. 1996), the court stated, "An entrapment instruction is not appropriate unless there is evidence to support a finding that the government, either directly through its law enforcement agents or indirectly through another individual, induced the defendant to commit the offense." In the case at bar there is clearly evidence that, not only did the government target Aref all along, but that the informant induced him to commit crimes on several occasions. Therefore, Yassin Aref is entitled to an

instruction on entrapment, and the government has the burden to prove predisposition beyond a reasonable doubt. *United States v. Salerno*, 66 F.3d 544 (2nd Cir. 1995).

**Entrapment as a Matter of Law**

Yassin Aref hereby incorporates the case law regarding entrapment as a matter of law made in co-defendant Mohammed Hussain's omnibus motion, and moves to dismiss the indictment on that ground. See *United States v. Cummings*, 969 F.2d 223 (6th Cir. 1992); *United States v. Bala*, 1999 US Dist. LEXIS 12529 (NDNY 1999).

In the August 9, 2005 motion for a protective order, at page 30, the government stated that evidence of Mr. Aref's predisposition would include "accepting, without hesitation, the proposal to launder what were represented to be proceeds of a SAM sale to terrorists in New York City ... Aref's speeches, sermons and affiliations, ...cautioning the CW about law enforcement, Aref's ...expression of a desire to take on the CW as a silent partner in the purchase of Hussain's pizzeria, Aref's presenting to the CW a 'different opportunity' to negotiate the $9,200 check, Aref's misreporting of his income and resources to obtain public benefits..."

It is submitted that none of the above material is probative of predisposition to commit the alleged offenses regarding money laundering or providing material support to terrorists. First, Mr. Aref did not "accept a proposal to launder money;" he was brought in only as a witness to the transactions, as required under Islamic law. Secondly, his "speeches, sermons and affiliations" are far too general and removed in time from the allegations for which predisposition is relevant, and thus, while they may show religious and/or political *beliefs*, do not show any predisposition to any *acts* in support of money laundering or terrorism.

Similarly, cautioning the CW about law enforcement does not show any predisposition to

money laundering or terrorism, but, rather, reflects the post 9-11 climate in which Muslims are seen as suspect and must carefully watch what they say, for any general statements perceived as being "anti-American" can cause them to be detained, interrogated, etc.

Asking the CW to be a silent partner in the pizza business has absolutely no connection to any predisposition, but is clearly only an attempt to raise sufficient funds to purchase the business, which is just as clearly not connected to any of the illegality alleged in the indictment.

Not only does the discussion of the $9,200 check not show any predisposition, to the contrary, it shows lack thereof, as when the CW said "if this is 'in the name of Allah' I won't charge you the transfer cost," Mr. Aref dropped the whole idea.

Finally, any misrepresenting of income is completely unrelated to a predisposition to commit money laundering or promote terrorism - as pointed out in Mr. Hussain's motion, that would mean that any medicaid fraud or tax evasion charge could be said to be evidence of a predisposition toward terrorism, which is completely absurd.

In sum, none of the evidence mentioned by the government supports predisposition, and the Court should find that Yassin Aref was entrapped as a matter of law, and dismiss the indictment.

**Evidence**

Even if the Court does not find that Mr. Aref was entrapped as a matter of law, much of the evidence the government seeks to admit would not be admissible to show predisposition in any event. In *United States v. Gentile*, 1996 US App. LEXIS 31806 (2nd Cir. 1996), the Second Circuit stated:

> "To rebut an entrapment defense, the Government is permitted to introduce

evidence to demonstrate that the defendant was predisposed to commit the offense. Evidence of predisposition is admissible only if it shows that the defendant's past conduct is 'near enough in kind to support an inference that his purpose included offenses of the sort charged.' [*United States v. Harvey*, 991 F.2d 981, 994 (2nd Cir. 1993)]

It is submitted that, based on the discussion above regarding the proposed "predisposition evidence," none of the evidence mentioned by the government is "near enough in kind" to support an inference that Mr. Aref's purpose included the offenses charged. Yassin Aref requests permission to supplement this motion if necessary when the government submits more particularized information regarding the alleged "predisposition evidence."

## II      SEVERANCE

### A.      Severance of Counts 28, 29 and 30 from the Remainder of the Indictment

Rule 8(a) of the Federal Rules of Criminal Procedure provides:

> "Rule 8. ...(a) Joinder of Offenses. The indictment of information may charge a defendant in separate counts with 2 or more offenses if the offenses charged - whether felonies or misdemeanors or both - are the same or similar in character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

Rule 8(b) generally relates to severance of different defendants, however the Second Circuit has held that in a multiple defendant case, a motion to sever different offenses should be made under Rule 8(b), therefore this motion is made pursuant to Rule 8(b), although the standard is the same as that described in Rule 8(a) above. See *United States v. Rojas*, 2001 US Dist LEXIS 20373, at 9, (2nd Cir. 2001).

Counts 1-27 of the superseding indictment include both defendants, and those counts all charge offenses relating to the sting operation where the informant induced (or attempted to induce, as it appears that he was not always understood) the defendants to commit certain

offenses.

In contrast, Counts 28-30 involve only Yassin Aref, and involve allegations completely unrelated to the sting operation. Count 28 alleges that on February 13, 2002, Yassin Aref did not mention his past alleged membership in the Islamic Movement of Kurdistan, a Kurdish nationalist organization (which is not, nor has it ever been, designated a "foreign terrorist organization" by the United States) in an immigration form in which he was asked to list his past and present membership in or affiliation with "every political organization, association, fund, foundation, party, club, society or similar group in the United States or in any other places since your 16[th] birthday[2]."

Similarly, Count 29 alleges that on August 5, 2004 (significantly, hours after his arrest in this case) Mr. Aref failed to tell the FBI of his past membership in the Islamic Movement in Kurdistan. Finally, Count 30 alleges that, also on August 5, 2004, Mr. Aref did not admit to having met Mullah Krekar many years earlier.

There are many cases where severance has been granted under Rule 8(a) or (b) because the government improperly joined distinct offenses in the same indictment. *United States v. Rojas,* 2001 US Dist. LEXIS 20373 (SDNY 2001) (severance granted where government tried to join two different conspiracies in a single indictment); *United States v. Halper*, 590 F.2d 422 (2nd Cir. 1978) (convictions reversed because Medicaid and mail fraud charges were improperly joined with tax evasion charges); *United States v. Richardson*, 161 F.3d 728 (DC Cir. 1998)(conviction reversed where weapon charges had been improperly joined with charges based

---

[2]It is submitted that for many if not most people, simply remembering such a list of organizations, clubs, etc, is an impossible task.

on statements allegedly made by the defendant at the time of his arrest); *United States v. Creamer*, 370 F. Supp.2d 715 (NDIL 2005) (bank fraud charges were severed from tax charges); *United States v. Kaquatosh*, 227 F. Supp.2d 1045 (EDWI 2002)(charges involving assault with intent to kill were severed from another assault charge); *United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996) (Joinder of charges involving mislabeling of shrimp with tax charges was improper); *United States v. Diaz-Munoz*, 632 F.2d 1330 (5th Cir. 1980)(insurance fraud and embezzlement charges were improperly joined with tax charges); *United States v. Lynch*, 198 F. Supp.2d 827 (NDTX 2001) (a tax charge could not be joined with charges involving an embezzlement scheme).

In the instant case it is very clear that most if not all of the criteria mentioned in Rule 8(a) do not apply to allow joinder of Counts 28-30. The offenses alleged in the sting operation and the alleged false statements/omissions to authorities certainly are not based on the same act or transaction, nor are they part of any common scheme or plan. Neither are they "the same or similar in character," the broadest category under Rule 8(a).

Interestingly, *Richardson*, supra, involves the severance of new charges which arose when the defendant was arrested in the underlying case - in the instant case, Counts 29 and 30 are similarly based on statements allegedly made by the defendant when he was arrested in the underlying case. In *Richardson*, the DC Circuit reversed the underlying weapons convictions, holding that the improper joinder was not harmless error.

It appears that the only conceivable basis for allowing Counts 28-30 to remain in the indictment is that the government will attempt to use evidence of past membership in the Islamic Movement in Kurdistan, and evidence that Mr. Aref had previously met Mullah Krekar, as

evidence that he was predisposed to commit the offenses alleged in Counts 1-27. There is some authority for the proposition that where evidence is mutually admissible, joinder may be allowable. *See United States v. Halper*, supra. However, simply because evidence of one offense may be admissible in a trial of another offense under Rule 404(b), it does not follow that joinder is justified. *Halper*, supra; *United States v. Sampson*, 385 F.3d 183 (2nd Cir. 2004); *United States v. Madrid*, 302 F. Supp.2d 187 (SDNY 2003).

There are several cases where severance has been granted where the government alleged that joinder was proper because of mutuality of evidence. *United States v. Sampson*, 385 F.3d 183 (2nd Cir. 2004)(severance granted under Rule 14 [discussed below] where the government alleged that evidence relating to certain offenses would be admissible at a trial of other offenses); *United States v. Madrid*, 302 F. Supp.2d 187 (SDNY 2003)(severance granted under Rule 14 in spite of government's assertion of mutual admissibility of evidence); *United States v. Halper*, supra (Misjoinder under Rule 8 was reversible error even though government claimed that evidence of one offense would be admissible under Rule 404(b) with respect to the others); *United States v. Nicely*, 922 F.2d 850 (DC Cir. 1991) (convictions reversed based on misjoinder even though some of the evidence would be admissible as to each set of charges); *United States v. Creamer*, 370 F. Supp.2d 715 (NDIL 2005) (joinder improper under Rule 8 where the government claims evidentiary overlap); *United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996)( Joinder was error even though government alleged evidence common to both sets of counts).

In *Madrid*, supra, the court granted severance of narcotics charges from bank and wire fraud charges under Rule 14 (discussed below) even though the government argued that there was mutual admissibility of evidence under Rule 404(b). The court stated:

"...[W]e ... exercise our discretion to sever the counts under Rule 14 to avoid undue prejudice. ...

[T]he danger of undue prejudice is particularly acute in this case. ...[T]he laundering trial will involve evidence connecting defendant to a corrupt politician and a powerful, violent narcotics cartel. ... This evidence may well arouse jury animus that could, in a joint trial, spill over into the jury's consideration of the fraud charges, which involve an alleged scheme which, fortunately, turned out not to have injured anyone.

The government's argument ... that the prejudice resulting from joinder would be insignificant in light of the mutual admissibility of the evidence under Fed. R. Evid. 404(b) to show knowledge, intent, opportunity and modus operandi does not resolve the issue. Even assuming the probative value of each offense with respect to the other, we still have to decide at the time of trial whether, on the balancing test imposed by Fed. R. Evid. 403, the prejudicial effect of that evidence substantially outweighs its probative value.

We are seriously concerned, for the reasons given above, about the prejudice that might result if certain narcotics laundering evidence was introduced into the bank and wire fraud trial. ..." *Madrid*, supra, at 190-191.

As in *Madrid*, supra, any evidence of Mr. Aref having met Mullah Krekar (and having denied it), no matter how remote in time, place and significance from the allegations in Counts 1-27, is highly prejudicial under the circumstances. Whether or not such evidence may be admitted to show predisposition is yet to be determined. However, this Court should follow *Madrid* and sever Count 30 (and Counts 28 and 29, which similarly relate to alleged past membership in the Islamic Movement in Kurdistan) from the rest of the indictment at this time.

Similarly, in *Nicely*, supra, the court stated:

"...The government repeats its cross-admissibility argument here to show that a joint trial was no more prejudicial than two separate trials where evidence of the other conspiracy could be introduced at each. While it is no doubt true that some of the evidence adduced at the joint trial might be admissible in separate trials, the standard suggested in *Lane* [*United States v. Lane*, 474 US 438 (1986)] asks whether the evidence 'would likely have been' cross-admissible. Although the government assures us that much of the evidence would have been cross-admissible under the Rule 404(b) exceptions ... its contention does not withstand close scrutiny. ...
***
Even if some of the evidence was admissible under Rule 404(b), appellants contend that it would not have survived a Rule 403 balancing. ...

Because the misjoinder effectively deprived the appellants of a fair trial in this case, we reverse. ..." *Nicely*, supra, at 856-857.

In *Randazzo*, the court held that Rule 8 joinder was error, stating:

"...As to the presence of evidence common to both sets of counts, we agree that the extent of common evidence plays a role in implementing Rule 8(a). But Congress did not provide for joinder of unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts. Indeed, looking to the important evidence, the shrimp and tax counts in this case seem to revolve around quite different facts. ..." *Randazzo*, supra, at 628, citation deleted.

Therefore, even if some evidence relating to Counts 28-30 may possibly be admissible to show predisposition with respect to Counts 1-27, it does not follow that severance must be denied.

Moreover, the cases discuss *mutuality* of evidence - that evidence of *each* set of offenses must be admissible against the other. Thus even if, *arguendo*, evidence regarding Counts 28-30 were admissible with regard to Counts 1-27, it is submitted that the evidence regarding Counts 1-27 would *not* be admissible with respect to Counts 28-30. Therefore, Mr. Aref would clearly be prejudiced on those counts if evidence of Counts 1-27 were admitted at a joint trial. The Court should follow *Madrid*, *Sampson*, *Halper*, *Nicely*, *Creamer* and *Randazzo* and grant severance of Counts 28-30.

**Rule 14**

Rule 14 of the Federal Rules of Criminal Procedure, and its accompanying case law, provide that even if joinder is permissible under Rule 8, severance may be granted if it appears that a defendant will be substantially prejudiced by a joint trial. *United States v. Sampson*, 385 F.3d 183 (2nd Cir. 2004). There are several cases where severance has been granted under Rule 14. *Sampson*, supra; *Madrid*, supra; *United States v. Harris*, 805 F. Supp. 166 (SDNY 1992);

*United States v. Best*, 235 F. Supp.2d 923 (NDIN 2002).

Yassin Aref hereby incorporates the above section relating to mutuality of evidence, and the evidence alleged with respect to Counts 28-30, to argue that even if the Court does not find severance to be mandatory under Rule 8, a discretionary severance is warranted under Rule 14. Because it is submitted that evidence of Mr. Aref's alleged desire to "promote terrorism" is very weak, any evidence of having met (and denied meeting) Mullah Krekar, the leader of Ansar al Islam, a designated "Foreign Terrorist Organization," is clearly extremely prejudicial. Likewise, all the evidence related to Counts 1-27 would clearly prejudice Mr. Aref with respect to Counts 28-30, and it is submitted that such evidence would clearly not be admissible in a separate trial of Counts 28-30. Therefore, if, *arguendo*, the Court does not grant severance under Rule 8(a), severance should be granted under Rule 14 and *Sampson*, *Madrid*, *Harris* and *Best*, supra, because the danger of undue prejudice is manifest.

**B.      Severance of the Two Co-defendants**

Yassin Aref also moves for severance of his case from that of Mohammed Hussain under Rule 8(b) and Rule 14 of the Federal Rules of Criminal Procedure. *See United States v. Gardell*, 2001 US Dist LEXIS 16118 (SDNY 2001); *United States v. Figueroa*, 618 F.2d 934 (2nd Cir. 1980).

Mohammed Hussain is alleged to have actively participated in and profited from what he allegedly believed to be a money laundering scheme which he allegedly also believed was intended to "promote terrorism" under relevant legal definitions. Yassin Aref, on the other hand, did not receive any money, did not profit in any way, and did not believe he was laundering any money - he was simply brought in as a witness to the transactions between the other two people

11

as required under Islamic law.

Moreover, the bulk of the transcripts of the alleged recorded conversations provided by the government involve discussions between the informant and Mohammed Hussain. Most of the time Yassin Aref was not even present and, additionally, those conversations are almost all in Urdu, a language he does not speak. In addition, even when the conversations involve Mr. Aref, and are in English, it is clear that his English is very limited.

Included in the transcripts are many alleged statements by Mr. Hussain which would cause spillover prejudice to Mr. Aref were they included in a joint trial. (See, for example, the comments allegedly made by Mr. Hussain on 12/15/03, 2/3/04, 2/13/04, 2/25/04) Finally, some of the transcripts, as well as the government's August 9, 2005 motion for a protective order, allege that Mohammed Hussain claimed to have been involved with a New York City affiliate of Jamaat Islami, a Pakistani Islamic fundamentalist organization.

For all of the above reasons, Yassin Aref requests severance under Rules 8(b) and 14.

## III   DISCOVERY

First, Yassin Aref hereby incorporates the discovery requests made by co-defendant Mohammed Hussain. Rule 16 of the Federal Rules of Criminal Procedure, specifically authorizes the discovery sought by Yassin Aref. Congress has implicitly codified the principle that discovery in criminal cases not be based upon a "sporting theory of justice." As stated in *Dennis v. United States*, 384 U.S. 855, 873, "In our adversary system for determining guilt or innocence it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relative facts."

**Statements Made During Questioning by One Known By Aref to be an Agent**

The government has made reference to several alleged written and/or oral statements by Yassin Aref which were allegedly made during his interrogation by government agents on various occasions. The government must provide copies of the substance of all the following alleged statements, including all written reports, and including all agents' notes. *United States v. Almohandis*, 307 F. Supp.2d 253 (DMA 2004) These would include, but are not necessarily limited to: 1) any and all statements allegedly made on October 4, 2001, when Mr. Aref was interviewed by the FBI and the New York State Police; 2) any and all statements allegedly made on February 13, 2002 (which are the basis for Count 28 of the indictment); 3) any and all statements allegedly made on December 30, 2002, when Mr. Aref was again interviewed by the FBI; 4) any and all statements made on April 4, 2003, when Mr. Aref was interviewed at length by FBI agents; 5) any and all post-arrest statements allegedly made on August 5, 2004, when Mr. Aref was extensively interrogated by various government agents.

The *Almohandis* court recently stated:

> "In my judgement, Rule 16(a)(1)(A) ,,, is designed to deal with the situation in which a defendant makes an oral statement to a government agent in response to interrogation knowing that the person is an agent. Regardless of whether or not the agent ever reduces the oral statement to writing, the government must disclose the 'substance' of the oral statement to the defendant if it intends to use the oral statement at trial. ...
> Rule 16(a)(1)(B)(ii) ... contains an additional obligation to disclose 'any written record containing the substance of any relevant oral statements' made by the defendant. Unlike Rule 16(a)(1)(A), the obligation to disclose exists regardless of whether or not the government intends to use the statement at trial. ..." *Almohandis*, supra, at 255

Thus, the government must provide the substance of all alleged oral statements it intends to make use of at trial, and must provide any written record of any such statement, regardless of whether it intends to use it at trial. In addition, Rule 16(a)(1)(B) provides that the government

must turn over any written or recorded statement of the defendant which is in the government's possession, custody or control.

**Recordings**

As pointed out in co-defendant Hussain's omnibus motion, the government must also provide all video and audio recordings of the defendants, including all such recordings of conversations with the informant. *United States v. Bufalino*, 576 F.2d 446 (2nd Cir. 1978); *United States v. Crisona*, 416 F.2d 107 (2nd Cir. 1969) While much of said material has been provided, it is not clear at this time that all the required material has been provided, and Yassin Aref requests that any such material not yet provided by turned over immediately.

**CIPA**

The government has stated that there is classified information relevant to this case, and has provided the Court with certain material which the defendants and their counsel have not been allowed to see, in spite of the fact that both defense counsel have now obtained security clearances. For example, the government's August 9, 2005 motion for a protective order was very heavily redacted, and much of its contents were kept from the defense. The Court has not yet ruled on a defense request to see the unredacted government motion.

**Access of Defense Counsel**

As stated in Yassin Aref's August 29, 2005 Affirmation in Opposition to Protective Order, the purpose of the defense obtaining the security clearances was so that the defense attorneys could examine materials for their clients so as to adequately prepare a defense.

The government should be directed to disclose its unredacted application to the defense, redacting from public disclosure those items designated "classified," and then allow the

14

defense to view the application within the secured methods set up in this case (i.e. secure room, no notes to leave, no release to the public, etc.).

The defense would then be in position to know the type and categories of materials the government is now asking the court to protect from disclosure, and be in a position to present arguments to the court in response to the application for disclosure of those materials.

The defense is unable to properly or completely articulate defenses or possible defenses until it views materials which the government is obliged to provide to the defense.

Second, the defense is entitled to "disclosure of classified information upon a showing that the information is 'relevant and helpful to the defense...or is essential to a fair determination of a cause.'" *United States v. Moussaoui*, 382 F.3d 453 (4th Cir., 2004).

Therefore, Yassin Aref reiterates his prior motion that defense counsel be given access to the unredacted government motion, and to any and all other classified material relevant to the case.

**Violation of Defendant's Fifth and Sixth Amendment Rights**

The court in *United States v. Moussaoui,* 365 F.3d 292 (4th Cir. 2004) recently held that the defendant's Fifth and Sixth Amendment rights would be violated were he not allowed to depose witnesses with testimony favorable to him. The *Moussaoui* court stated:

> "In all cases of this type - cases falling into 'what might loosely be called the area of constitutionally guaranteed access to evidence,' the Supreme Court has held that the defendant's right to a trial that comports with the Fifth and Sixth Amendments prevails over the government's privilege. Ultimately, as these cases make clear, the appropriate procedure is for the district court to order production of the evidence or witness and leave to the Government the choice of whether to comply with that order. If the government refuses to produce the information at issue - as it may properly do - the result is ordinarily

dismissal." *Moussaoui*, supra, at 310, quoting *Arizona v. Youngblood*, 488 US 51, 55.

Any exercise of CIPA (the Classified Information Procedures Act) which deprives a defendant of fundamental constitutional rights is not permitted - CIPA may not place the defendant in any worse position that he would have been in without it. *United States v. Poindexter*, 698 F. Supp. 316 (D. DC 1988). The *Poindexter* court stated:

> "Fortunately, Congress was alert to the fact that special cases might create special problems. It made clear that in any case involving classified information the defendant would not stand in a worse position because of such information than he would have if there were no such statutory procedures. To this end, Congress .... emphasized that the Court should not undertake to balance the national security interests of the government against the rights of the defendant but rather that in the end remedies and sanctions against the government must be designed to make the defendant whole again. Thus while a limited opportunity for creative judicial adjustment of CIPA procedures exists, in the end, defendant's constitutional rights must control." *Poindexter*, supra, at 320, citation deleted.

This Court should follow *Moussaoui* and *Poindexter*, supra, and take all necessary measures to insure that in protecting any legitimate national security interests, the defendants must not be denied their personal right to confront evidence against them.

### Rahwah Notebook

Finally, Yassin Aref hereby incorporates all the requests made in co-defendant Mohammed Hussain's omnibus motions with respect to the "Rahwah notebook" allegedly discovered at some sort of camp in 2003 in northern Iraq. See Mr. Hussain's memorandum of law, at pages 33-45.

## IV.    STATEMENTS

Yassin Aref moves to suppress any and all statements allegedly made by him after his arrest in this case.  The Fifth Amendment to the United States Constitution is the source of

privilege against self incrimination and provides that "no person...shall be compelled in any criminal case to be a witness against himself.  U.S. Constitution Amend. V.

When a suspect is questioned by agents of the government, in order for any alleged statements of said suspect to be admissible, the government has the burden of proving that the individual voluntarily waived his right to remain silent, and that any statement was freely given. *United States v. Dillard*, 2000 US Dist LEXIS 9912 (SDNY 2000); *United States v. Anderson*, 929 F.2d 96 (2nd Cir. 1991); *United States v. Crews*, 171 F. Supp.2d 93 (D. Conn. 2001).

The *Anderson* court affirmed the suppression of the defendant's statements in that case, stating:

> "The district court based its decision to suppress Anderson's statements in part on its conclusion that the *Miranda* warnings administered initially by Agent Valentine field to overcome the 'presumption of coercion' those warnings were designed to dispel. We review the warnings not for whether they adhered to a certain form, but for their substance.
>
> \*\*\*
>
> ...The police may use a defendant's confession without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice. Since custodial interrogation is inherently coercive, the aim of *Miranda* and its progeny is to safeguard a suspect's right, if he so chooses, to remain silent when questioned by the police.
>
> ...Because in-custody interrogation contains psychological pressures that cause a suspect to speak when he would otherwise remain silent, the prosecution must show that this safeguard of informing the accused of his rights was actually employed, so that a right enshrined in the words of the Constitution is not lost in the reality of the street." *Anderson*, supra, at 98-99, some citations deleted.

It is submitted that Yassin Aref was not properly accorded his constitutional warnings under Miranda v. Arizona in this case. While the prosecution claims that *Miranda* warnings were given to him, and that, on one occasion, the warnings were translated into Kurdish, his native language, it is submitted that Mr. Aref did not understand the agent (on the occasion when there

17

was no translator) and did not adequately understand the translator. Yassin Aref was not made fully aware of his right to remain silent, and did not voluntarily relinquish said right.

The *Anderson* court also stated:

> "...Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Anderson*, supra, at 99

It is submitted that Mr. Aref, who had no criminal history, was subjected to intensive, pressurized and threatening interrogation by several different government agents while in custody.  It is this type of police interrogation that courts have recognized threatens the exercise by an individual of the right to remain silent because of the inherently coercive environment created.  *New York v. Quarles*, 467 U.S. 649, 654 (1984).

Therefore the Court should suppress any and all post-arrest statements obtained from Mr. Aref or, in the alternative, hold a hearing to examine the circumstances under which said statements were obtained.

## V.    SUPPRESSION OF EVIDENCE SEIZED

There were several search warrants obtained in this case, and the two which are challenged herein are the warrants for the search of Yassin Aref's residence at 44 West Street in Albany, and the warrant to search the Masjid As Salam Mosque at 276-287 Central Avenue in Albany. The warrants were executed on August 5, 2005, and many items were seized.

In the application for the warrant, FBI Special Agent Timothy Coll discussed much of the evidence subsequently provided to the defense - i.e. the recorded conversations involving the informant.  However, on page 5 of the warrant applications mention is made of the notebook

allegedly found in norther Iraq in 2003. The application states, "The notebook entry also referred to AREF as 'Commander ((Yassin)) - New York, United States'" As is well-known, the translation of said notebook was falsely made, and the word claimed to mean "Commander" actually means "brother." It is submitted that Special Agent Coll either knew that said information was false, or acted in reckless disregard for the truth in relying on said information, and as a result the Court should suppress the evidence seized.

In addition, it is submitted that many of the statements attributed to both Mr. Aref and Mr. Hussain in the warrant application were either not accurately transcribed, were not accurately translated, or were taken out of context. It is submitted that Special Agent Coll either knew that some of said information was inaccurate, or acted in reckless disregard for the truth in relying on said information.

In order for a warrant to be issued, there must be probable cause, which means that based on the totality of the circumstances, there must be a substantial basis for believing that evidence of a crime would be found in a given location. *Illinois v. Gates,* 462 U.S. 213 (1983).

Because much of the relevant information in the warrant application was not accurate, and because said inaccurate information was known to be inaccurate, or was obtained in reckless disregard for the truth, there was no valid probable cause for the issuance of the warrants, and all the evidence seized should be suppressed. *Illinois v. Gates, supra.*

In the alternative, if the Court does not suppress the evidence seized, Yassin Aref requests an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).

In addition, it is submitted that any alleged consents to search by Yassin Aref were invalid, as no voluntary consent was provided - any consents were the product of extensive

psychological coercion of Mr. Aref and his family.

## VI.    BRADY MATERIAL

In view of the broad mandate of *Brady v. Maryland,* 373 U.S. 83 (1963), it is respectfully requested that the prosecution furnish to Yassin Aref any and all information or evidence which is within the possession or knowledge of the prosecution, which evidence might be favorable to him upon further proceedings on this indictment.  In *Brady*  it was held that suppression of evidence favorable to the accused which is material either to guilt or punishment violates the due process clause of the Fourteenth Amendment, regardless of whether the prosecutor is acting in good faith. *Id.*

Yassin Aref hereby incorporates the requests for *Brady* and *Giglio* material made in co-defendant Mohammed Hussain's omnibus motion, at pages 46-49 of said memorandum of law.

## VII.    PRIOR BAD ACTS OR CONVICTIONS

Yassin Aref has moved for an order directing the United States to disclose to the defense its intention to introduce evidence of prior bad acts or convictions which would be admissible under Rule 404(b) of the Federal Rules of Evidence. While certain evidence has been mentioned in the government's motion for a protective order, the government must make a much more detailed showing of just what it wishes to introduce, and the claimed basis for doing so. Before such evidence is admissible, the government must show that it is relevant to an issue other than character, (i.e. motive, intent, identity, knowledge, plan or design), and that the probative value outweighs the dangers of unfair prejudice and confusion. *United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978).  This evidence must be weighed against the requirements of Rule 403 of the Federal Rules of Evidence, which requires evidence to be excluded if its probative value is

substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, undue delay or needless cumulative evidence.

In the interests of justice and judicial economy, such issues should be determined prior to trial.  The propriety of such pretrial determinations or in limine rulings have been approved by the Second Circuit.  see *United States v. Alicea*, 837 F.2d 103 (2d Cir. 1988); *United States v. Valencia*, 826 F.2d 171 (2d Cir. 1987)

## VIII.  PRESERVATION OF NOTES

Yassin Aref requests that the court order the prosecutor to instruct the detectives and agents on this case to preserve their original notes. Destruction of such notes is in violation of Rule 16 of the Federal Rules of Criminal Procedure and can result in preclusion of testimony. *Unites States v. Ramirez,* 954 F. 2d 1035 (5th Cir.), *cert. denied,* 112 S. Ct. 3010 (1992). See also *United States v. Carucci*, 183 FRD 614 (SDNY 1999); *United States v. Molina-Guevara*, 96 F.3d 698 (3rd Cir. 1996).

## IX.    ADDITIONAL MOTIONS

Yassin Aref respectfully requests the right to make further motions as required as a result of the receipt of additional information in this case should the government see fit to provide defense counsel with the discovery it is obligated to provide. Additionally, Yassin Aref reserves the right to file new motions in support of issues raised in this motion and in response to this motion.

### CONCLUSION

For the foregoing reasons, Yassin Aref is entitled to the relief requested in the accompanying motion.

Dated: December 14, 2004

Respectfully submitted:

KINDLON and SHANKS, P.C.

By:_____
S/Terence L. Kindlon
Bar Roll No. 103142
*Attorney for Yassin Aref*
74 Chapel Street
Albany, New York  12207
Telephone: (518) 434-1493
Fax: (518) 432-7806
E-mail: TKindlon@aol.com