UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,                        **AFFIDAVIT**

                **v.**                            **04-CR-402 TJM**

**YASSIN AREF and
MOHAMMED HUSSAIN,**

                Defendants.

1.      Terence L. Kindlon, an attorney duly admitted to practice in the Northern District of New York, being duly sworn, states:

2.      I am the attorney for Yassin Aref and I make this affirmation, on his behalf, in support of the motion for pretrial relief herein.

3.      I am familiar with the facts and circumstances of this case. The sources of my information include conferences with my client, investigation, research and discovery material.

4.      The government engaged in illegal electronic surveillance of thousands of US persons, including Yassin Aref, then instigated a sting operation to attempt to entrap Mr. Aref into supporting a non-existent terrorist plot, then dared to claim that the illegal NSA operation was justified because it was the only way to catch Mr. Aref. That sequence of events is truly breathtaking as it shows the Administration's arrogant dismissal of our Constitution and of everything that makes it worthwhile to be an American.

**A.    MOTION TO SUPPRESS ALL EVIDENCE IN THE CASE AS THE POISONOUS FRUIT OF ILLEGAL ELECTRONIC SURVEILLANCE**

5.    On or about December 17, 2005 the New York Times (NYT) reported that warrantless electronic surveillance authorized by the Bush Administration and carried out by the National Security Agency (NSA), which is illegal according to a widespread consensus of legal scholars, was performed within the United States since 2001 in connection with investigations of alleged "terrorist" activities within the United States.

6.    On December 23, 2005 I wrote to Assistant United States Attorney William C. Pericak and asked him to immediately "affirm or deny the occurrence of (any such) alleged unlawful act [as defined in 18 USC 2510]" pursuant to 18 USC 3504(a). (12/23/05 Letter attached as Exhibit "A.") No response has been forthcoming.

7.    On or about January 11, 2006 I again wrote to Assistant United States Attorney William C. Pericak and included a letter by Harvard Law Professor Laurence H. Tribe explaining his "inescapable conclusion" that the above mentioned surveillance program is illegal. I asked Mr. Pericak again to respond and to provide a summary of the dates and times of any and all warrantless electronic surveillance of Yassin Aref, together with a statement concerning any and all information so gathered.(1/11/06 Letter attached as Exhibit "B.")

8.    As of yet I have received no response from Mr. Pericak to either of the above requests.

9.    Then on January 17, 2006 the New York Times printed a photograph of Yassin Aref, on Page A-14, and reported that General Michael V. Hayden, who was NSA director when the program began, stated, "*I can say unequivocally that we have gotten information through this*

*program that would not otherwise have been available.*" (NYT, January 17, 2006, Page A14)

10.    The article went on to say, "Some of the officials said the eavesdropping program might have helped uncover people with ties to Al Qaeda in Albany, Portland, Ore.; and Minneapolis." (NYT, January 17, 2006, at A14)

11.    Very significantly, the article further stated:

"By contrast [to cases where the NSA surveillance played only a minimal role], *different officials agree that the N.S.A.'s domestic operations played a role in the arrest in Albany of an imam and another man* who were taken into custody in August 2004 as part of an F.B.I. counterterrorism sting operation.
        The men, Yassin Aref, 35, and Mohammed Hossain, 49, are awaiting trial on charges that they attempted to engineer the sale of missile launchers to an F.B.I. undercover informant." (NYT, January 17, 2006, at A14)

**1.    THE NSA WARRANTLESS SURVEILLANCE PROGRAM IS CLEARLY ILLEGAL AND UNCONSTITUTIONAL**

12.    President George W. Bush has recently conceded that under the NSA surveillance program as it has been conducted since 2001, no warrants were obtained.

13.    While the President claims the NSA program is legal, that claim is entirely specious, as shown by the plain language of the above mentioned statutes, the overwhelming consensus of legal scholars, two Congressional reports and case law.

14.    Harvard Law School Professor Laurence H. Tribe, a noted legal scholar, was asked by Congressman John Conyers, Jr., to write an opinion of the legality of the NSA warrantless surveillance program, and on January 6, 2006, Professor Tribe called the program "as grave an abuse of executive authority as I can recall ever having studied," stating:

"... [T]he [NSA surveillance] scheme in question, far from being *authorized* by Congress, flies in the face of an *explicit congressional prohibition* and is therefore unconstitutional without regard to the Fourth Amendment unless it belongs to that truly rare species of executive acts so central to and inherent in the power vested in the

President by Article II that, like the power to propose or veto legislation or to issue pardons, its exercise cannot constitutionally be fettered in any way by the Legislative Branch.

Any such characterization would be hard to take seriously with respect to unchecked warrantless wiretapping. As the Supreme Court famously held in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 US 579 (1952), an emergency presidential takeover for a limited time of certain critical publicly held corporations ... falls outside that tiny category of congressionally illimitable acts and is indeed unconstitutional unless affirmatively authorized by Congress. If that is so, than certainly an unchecked presidential program of secretly recording the conversations of perhaps thousands of innocent private citizens in the United States in the hopes of gathering intelligence potentially useful for the ongoing war on a global terrorist network not only falls outside that category but misses it by a mile.

***

The presidential power at issue in this case is therefore subject to the control of Congress. And that Congress has indeed forbidden this exercise of power is clear. The Foreign Intelligence Surveillance Act of 1978 unambiguously limits warrantless domestic electronic surveillance, *even in a congressionally declared war*, to the first 15 days of that war; criminalizes any such electronic surveillance not authorized by statute; and expressly establishes FISA and two chapters of the federal criminal code, governing wiretaps for intelligence purposes and for criminal investigation, respectively, as the '*exclusive* means by which electronic surveillance ... and the interception of domestic wire, oral and electronic communications may be conducted.' 50 USC 1811, 1809, 18 USC 2511(2)(f). ...

***

Finally [with respect to the administration claim that the warrantless surveillance was authorized by Congress when it passed the Authorization to Use Military Force (AUMF) in 2001], it is telling that Attorney General Gonzalez, when asked in his December 19 press briefing why the administration hadn't simply ...[obtained approval from Congress], replied that .... Congress most likely would have denied the authority sought! To argue that one *couldn't have gotten* congressional authorization (in late 2001, when the NSA program was secretly launched) after arguing that, by the way, one *did* get congressional authorization (in late 2001, when the AUMF was enacted) takes some nerve....

The inescapable conclusion is that the AUMF did *not* implicitly authorize what the FISA expressly prohibited. It follows that the presidential program of surveillance at issue here is a violation of the separation of powers - as grave an abuse of executive authority as I can recall ever having studied." Letter of Laurence H. Tribe, emphasis in original. (Letter from Professor Laurence H. Tribe attached as Exhibit "C.")

15.    On or about January 8, 2006 14 different constitutional law scholars and former

government official (Curtis A. Bradley, David Cole, Walter Dellinger, Ronald Dworkin, Richard

Epstein, Harold Hongju Koh, Philip B. Heymann, Martin S. Lederman, Beth Nolan, William S. Sessions, Geoffrey R. Stone, Kathleen M. Sullivan, Laurence H. Tribe and William W. Van Alstyne) wrote a joint letter to Congress in which they stated unequivocally that the Administration's defense of the NSA warrantless surveillance program "fails to identify any plausible legal authority for such surveillance." (Letter attached as Exhibit "D.")

16. The above letter concludes by stating that it is "beyond dispute that, in such a democracy, the President cannot simply violate criminal laws behind closed doors because he deems them obsolete or impracticable." (Exhibit "D.")

17. It is submitted that the government could not have legitimately obtained a FISA warrant for the surveillance of Yassin Aref because he was not ever "involved in" international terrorism.

18. The government engaged in illegal electronic surveillance of thousands of US persons, including Yassin Aref, then instigated a sting operation to attempt to entrap Mr. Aref into supporting a non-existent terrorist plot, then dared to claim that the illegal NSA operation was justified because it was the only way to catch Mr. Aref! That sequence of events is truly breathtaking as it shows the Administration's arrogant dismissal of our Constitution and of everything that makes it worthwhile to be an American.

**2. ALL EVIDENCE IN THIS CASE IS THE FRUIT OF THE ILLEGAL ELECTRONIC SURVEILLANCE AND MUST BE SUPPRESSED**

19. Because government officials have said that Yassin Aref was a subject of the NSA warrantless surveillance program, and because that surveillance was clearly illegal, as described above, all evidence obtain therefrom must be suppressed.

20.     In addition, upon information and belief, because it was the illegal surveillance which led the government to investigate Mr. Aref in the first place, *all* evidence in this case is the fruit of the poisonous tree of said illegal surveillance and must be suppressed.

21.     In this case the "poisonous tree" of blatantly illegal surveillance has spread its roots under the Constitution and is undermining its foundation, thereby damaging the Fourth Amendment protection against unreasonable search and seizure, the First Amendment right to free expression, and the limits on the power of the Executive Branch, not to mention other constitutional provisions, such as the Sixth Amendment right to confront evidence. The need to squarely confront this violation cannot be overemphasized.

22.     Upon information and belief, based on the statement by General Michael V. Hayden, cited above at Page 2, that the warrantless surveillance program provided evidence which "unequivocally" would not otherwise have been available, and by the statements by "different officials" that the illegally obtained information "played a role in the arrest" of Yassin Aref, the flagrantly illegal evidence was the cause of the entire investigation in this case.

23.     As a result, there was no "independent source" and no "inevitable discovery" of the evidence in this case, the bulk of which was not actually "discovered," but, rather, *created* by the sting operation itself.

24.     As discussed above, the illegality in this case was incredibly flagrant, and it is of vital importance not only to the Fourth Amendment, but to the fundamental principle of checks and balances which *must* limit the power of the executive if our democracy is to function at all. If the President can unilaterally decide when and if he will follow the law, there is really no role for Congress or the courts.

**B.    DISMISSAL**

25.    While suppression, rather than outright dismissal of an indictment, is generally the remedy where the evidence before the grand jury was the poisonous fruit of illegally obtained evidence, there is some authority for the proposition that when the illegality is sufficiently blatant, the integrity of the grand jury itself is affected, and the indictment should be dismissed

26.    While the Administration did not concede the illegality of the surveillance, it is submitted that here, where the violation was so blatant, as discussed above, the failure to concede it actually makes it *more egregious*. The President's claim that he can violate the law at will solely *because* he is the President is extremely dangerous and must be confronted and countered in the strongest terms possible.

**C.    DISCOVERY UNDER 18 USC 3504**

27.    As stated above, defense counsel already wrote two letters to Assistant United States Attorney William C. Pericak, requesting that the government fulfill its obligation under 18 USC 3504 by affirming or denying the existence of the unlawfully obtained evidence. The government has failed to respond to either of the letters.

28.    Because "different officials" have now stated  - to the New York Times - that the evidence obtained from the warrantless electronic surveillance "played a role" in the arrest of Yassin Aref, it is quite clear that the evidence in question exists. However, the government must still fulfill its obligation under 18 USC 3504 and "affirm or deny the occurrence of the alleged unlawful act."

29.    Not only that, but the government must provide the defense with all tapes, transcripts or other records of the intercepted communications.

30.    Given that warrantless electronic surveillance of Yassin Aref took place, and led directly to the investigation and charges herein, the application of 18 USC 3504(1) cannot depend on whether the prosecution admits that the surveillance was illegal. Clearly, if this *Court* finds the surveillance to be illegal, the Court must order the government to provide all records relating to said illegal surveillance.

31.    Further, if the government claims, somehow, that any of the evidence is classified, that should not affect the requirement that it be provided. As pointed out in the prior omnibus motion, *defense counsel has obtained a security clearance and has the right to receive classified evidence* relevant to this case.

32.    The Court reserved on the prior motion to gain access to said evidence, but the revelation that blatantly illegal evidence was obtained in this case makes an even stronger case for providing all the evidence to the defense. It is submitted that the evidence of illegality constitutes *Brady* material in this case, which must *certainly* be provided to the defense, regardless of whether any of it can said to be classified.

33.    Therefore, the Court must order the prosecution to affirm under 18 USC 3504 whether evidence in this case "was obtained by the exploitation of an unlawful act," and, if it rules that occurred, must order that the defense be provided with all records relating to the warrantless surveillance.

**CONCLUSION**

Based on the foregoing, this Court should find that the NSA warrantless electronic surveillance program was illegal; that all evidence derived therefrom must be provided to the defense immediately; that all evidence in this case should be suppressed as the fruit of the

illegality; and that the indictment should be dismissed as a result.

       Dated: January 20, 2006.

                                       S/Terence L. Kindlon
                                       Bar Roll No. 103142
                                       *Attorney for Yassin Aref*
                                       74 Chapel Street
                                       Albany, New York  12207
                                       Telephone: (518) 434-1493
                                       Fax: (518) 432-7806
                                       E-mail: TKindlon@aol.com